Harvey B. **JOHNSON**, Appellant,

v.

**RAC CORPORATION**, Appellee.

No. 73–1958.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 5, 1973.

Decided Feb. 5, 1974.

John P. McKenna, Washington, D. C. (Lawrence F. Rodowsky, Baltimore, Md., Rowley & Scott, Washington, D. C., Frank, Bernstein, Conaway & Goldman, Baltimore, Md., on brief), for appellant.

Edmund P. Dandridge, Jr., Baltimore, Md. (Venable, Beatjer & Howard, Baltimore, Md., Bleakley, Platt, Schmidt & Fritz, New York City, on brief), for appellee.

Before BOREMAN, Senior Circuit Judge, and RUSSELL and WIDENER, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

■ This is a products liability action to recover for personal injuries sustained in connection with a helicopter crash in the State of Virginia on December 31, 1970. Federal jurisdiction was based on diversity. The defendant RAC, alleged to be a Delaware corporation with its principal offices in New York, and one of the several defendants in the action, moved to dismiss on a number of grounds. Among the grounds of the motion was the claim of a failure on the part of the plaintiff to state a claim upon which relief could be granted against it.[1] The basis of this ground was the voluntary corporate dissolution[2] of the defendant more than three years before the institution of the suit pursuant to the provisions of the Delaware law, as established by the affidavit of the defendant's "Chief Executive Officer" and "Chairman of the Board of Directors". According to the defendant's contention, the Delaware corporate statutory law proscribed the maintenance of any suit against a voluntarily dissolved Delaware corporation if the suit was filed more than three years after such dissolution.[3] The plaintiff thereupon di-

---

[1]. Rule 12(b)(6), Rules of Civil Procedure, 28 U.S.C.

[2]. Delaware Code, Title 8, § 275(b)(c), (1970, Cum.Supp.)

A distinction has been made between a voluntary corporate dissolution and one arising out of a forfeiture for failure to pay license taxes or fees. Smith-Johnson Steamship Corporation v. United States (D.C.Del.1964) 231 F.Supp. 184, 186, n. 2; *but cf.*, Ross v. Venezuelan-American Independent Oil Pro. Ass'n, Inc. (D.C.Del.1964) 230 F.Supp. 701, "relying on the dubious precedent of Wax v. Riverview Cemetery Co., 41 Del. [2 Terry] 424, 24 A.2d 431," as the decision was described by the writers in 56 Cornell L.Rev. 865 at 888, n. 131.

*See, also,* Watts v. Liberty Royalties Corporation (10th Cir. 1939) 106 F.2d 941, 944 (involving a Delaware corporation):

" * * * It has generally been held that where charter laws provide for a cancellation and forfeiture of a corporate charter and corporate powers for failure to pay fees and also provide for a reinstatement of the powers of the corporation and for restoration of its charter upon the payment of its fees, the penalty provisions providing for the forfeiture of its charter rights are largely for the purpose of collecting the charter fees and do not end the life of the corporation."

To the same effect is Purcel v. Wells (10th Cir. 1956) 236 F.2d 469 (decided under Texas law).

[3]. Delaware Code, Title 8, § 278 (1968 Cum. Supp.).

"It is well settled at common law and in the federal courts that a corporation which has been dissolved is as if it did not exist." United States v. Safeway Stores (10th Cir. 1944) 140 F.2d 834, 836. All actions pending against it are abated and no new actions may be begun unless there is "some statutory authority [of the state of incorporation] for the prolongation of its life, even for litigation purposes." Chicago Title and Trust Co. v. Forty-One Thirty-Six Wilcox Bldg. Corp. (1937) 302 U.S. 120, 125, 58 S.Ct. 125, 127, 82 L.Ed. 147; Oklahoma Gas Co. v. Oklahoma (1927) 273 U.S. 257, 259, 47 S.Ct. 391, 71 L.Ed. 634; Sedgwick v. Beasley (1949) 84 U.S.App.D.C. 325, 173 F.2d 918, 919; International Pulp Equip. Co. v. St. Regis Kraft Co. (D.C.Del.1944) 54 F. Supp. 745, 748. Most jurisdictions have, however, chosen to provide by legislation "for a partial continuation of the existence of a corporation after the termination of its corporate life, for the purpose of enforcing liabilities that had previously accrued against it. Statutes of this type are remedial and should be broadly and liberally construed." United States v. Maryland & Virginia Milk Producers (D.D.C.1956) 145 F.Supp. 374,

rected extensive interrogatories, to the defendant. In the affidavit submitted by the defendant, it appeared that the affiant became a director of the defendant in 1963 and Chairman of the Board of Directors June 19, 1969, over a year after its alleged dissolution, and became Chief Executive Officer in 1972, some four years after its dissolution.[4] The affidavit also relates that the defendant has an employee who, living in Maryland but performing in Maryland no services for the defendant, does draw "checks relating to corporate activities outside Maryland." In this affidavit, it is stated that, since 1965 the defendant has been "continued in existence solely for the purpose of disposing of certain remaining assets, dissolving and liquidating the proceeds of its sales to its stockholders, and pursuing tax refunds for prior years from the Federal Government and New York State."[5] The plaintiff's interrogatories, among other things, sought, it is claimed by the plaintiff, to pierce the claim of the defendant that its activities were limited to dissolution and specifically inquired regarding the nature of the defendant's continued operations. At this point, the defendant filed for a protective order to defer all discovery until after the motion to dismiss for failure to state a claim on which relief could be granted against it was ruled on. While no formal order was entered on this application of the defendant for a protective order, it would appear that all parties understood that no discovery as against this defendant would be permitted until this phase of defendant's motion to dismiss on the ground that the statutory dissolution

---

375. Generally, these statutes fix a time limit within which suit must be filed after dissolution. The reason for such limitation was stated in Bishop v. Schield Bantam Company (D.C.Iowa, 1968) 293 F.Supp. 94, 96:

"There should be a definite point in time at which the existence of a corporation and the transaction of its business are terminated. To allow, as the plaintiff contends, the continued prosecution of lawsuits perverts the definiteness and orderly process of dissolution so as to produce a continuous dribble of business activity contrary to the intent of the winding up provisions of the statute."

See, also, American Optical Co. v. Philadelphia Electric Co. (D.C.Pa.1964) 228 F.Supp. 293, 295; and Hern and Alexander, Effect of Corporate Dissolution on Products Liability, 56 Cornell L.Rev. 865, 913 (1971).

Whether there is such statutory "promulgation" of corporate life in a particular case, so as to permit "a partial continuation of the existence of a corporation" after dissolution for purposes of suit, is determinable by reference to the laws of the state of incorporation of the dissolved corporation; Rule 17(b), Federal Rules of Civil Procedure, to this effect is no more than a restatement of a principle already firmly established in federal law. Wright & Miller, Federal Practice and Procedure, vol. 6, p. 738 (1971). Thus, in Oklahoma Gas Co. v. Oklahoma, supra, (273 U.S. at 259–260, 47 S.Ct. at 392) the Court put it:

"The matter [of the capacity of a dissolved corporation] is really not procedural or controlled by the rules of the court in which the litigation pends. It concerns the fundamental law of the corporation enacted by the state which brought the corporation into being."

For this reason, assuming that the defendant RAC has been legally dissolved under the laws of Delaware, the right of the plaintiff to maintain this action against the defendant is controlled by the statute law of Delaware.

There is some authority that, if a foreign corporation has qualified under the laws of another state, it, even though dissolved under the laws of the state of its incorporation, remains suable in the qualifying state until the laws of the qualifying state regulating withdrawal of a qualifying foreign corporation had been complied with. Trounstine v. Bauer, Pogue & Co. (2d Cir. 1944) 144 F.2d 379, cert. denied 323 U.S. 777, 65 S.Ct. 190, 89 L.Ed. 621, and Dr. Hess & Clark, Inc. v. Metalsalts Corp. (D.C.N.J. 1954) 119 F.Supp. 427. In its supporting affidavit, the defendant RAC alleges that it has never qualified under the laws of Maryland, where this suit was begun and, if this information is correct (and we do not imply to the contrary), these cases are inapposite to this case.

4. Cf., Oklahoma Gas Co. v. Oklahoma, supra, (273 U.S. at 261, 47 S.Ct. 391).

5. Cf., Bahen & Wright, Inc. v. C.I.R. (4th Cir. 1949) 176 F.2d 538; United States v. Cummins Distilleries Corporation (6th Cir. 1948) 166 F.2d 17.

barred the maintenance of the action against it (the defendant) was disposed of. The plaintiff complains that it was thereby denied a right to discovery in connection with this part of the motion to dismiss. The defendant replies that until the hearing the plaintiff had not pressed for further discovery. In any event, when this part of the motion to dismiss came on for hearing, the District Court denied the plaintiff's request for discovery, assuming, it would seem, that the supporting affidavit submitted by the defendant was conclusive of the defendant's right to a dismissal, and proceeded to dismiss the action against the defendant RAC. The plaintiff has appealed. We reverse.

■ Both the plaintiff and the defendant have argued at length the construction of the Delaware statute which prescribes the time within which a suit must be brought against a voluntarily dissolved Delaware corporation.[6] We do not, however, reach this point. The order of dismissal must be reversed on procedural grounds. The factual authority for the dismissal, as found by the District Court, rests on the supporting affidavit submitted by the defendant, which purported to detail the circumstances relating to the defendant's corporate dissolution, matters that did not appear in the complaint itself. When a motion to dismiss under Rule 12(b)(6) is founded on matters outside the pleadings, the District Court is obligated "to treat the motion to dismiss as one for summary judgment and to dispose of it as provided in Rule 56." Carter v. Stanton (1972) 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569; Smith v. Blackledge (4th Cir. 1971) 451 F.2d 1201, 1202; Leviner v. Richardson (4th Cir. 1971) 443 F.2d 1338, 1342; Phillips v. Columbia Gas of West Virginia, Inc. (D.C.W.Va.1972) 347 F.Supp. 533, 535, aff. (4th Cir.) 474 F.2d 1342. In such event, the rule expressly provides that "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." And, as the Court said in Dale v. Hahn (2d Cir. 1971) 440 F.2d 633, 638, "It seems fair to include within the term 'reasonable opportunity' some indication by the court to 'all parties' that it is treating the 12(b)(6) motion as a motion for summary judgment", with the consequent right in the opposing party to file counter affidavits or to pursue reasonable discovery.[7]

---

6. The Delaware statute has been involved in many cases that have arisen in federal courts, both in Delaware and in other jurisdictions. Among these are Melrose Distillers v. United States (1959) 359 U.S. 271, 79 S.Ct. 763, 3 L.Ed.2d 800; Smith-Johnson Steamship Corporation v. United States, *supra* (231 F.Supp. 184); Ross v. Venezuelan-American Independent Oil Pro. Ass'n, Inc., supra (230 F.Supp. 701); Damon Alarm Corp. v. American District Telegraph Co. (D.C.N.Y.1969) 304 F.Supp. 83; Matthies v. Seymour Manufacturing Company (D.C.Conn.1958) 23 F.R.D. 64 (rev. on other grounds, (2d Cir.) 270 F.2d 365); Lyman v. Knickerbocker Theatre Co. (1925), 55 App.D.C. 323, 5 F.2d 538 (*but see* Sedgwick v. Beasley, *supra*, 173 F.2d at 919 on this ·case); Trounstine v. Bauer, Pogue & Co. (D.C.N.Y.1942) 44 F.Supp. 767, aff. (2d Cir.) 144 F.2d 379, cert. denied 323 U.S. 777, 65 S.Ct. 190, 89 L.Ed. 621; United States v. Safeway Stores, *supra* (140 F.2d 834); United States v. Line Material Co. (6th Cir. 1953) 202 F.2d 929; United States v. P. F. Collier & Son Corp. (7th Cir. 1953) 208 F. 2d 936. In a number, the point in controversy was not whether the statutory time limit was absolute: that seemingly was assumed. The issue was whether the proceedings were of the character that fell within the class of actions which could be maintained within the three year period. Melrose Distillers v. United States, *supra* (359 U.S. at 273, 79 S.Ct. 763); United States v. United States Vanadium Corporation (10th Cir. 1956), 230 F.2d 646, cert. denied 351 U.S. 939, 76 S.Ct. 836, 100 L.Ed. 1466; United States v. Safeway Stores, *supra* (140 F.2d 834); United States v. Line Material *Co.*, *supra* (202 F.2d 929); United States v. P. F. Collier & Son Corp., *supra* (208 F.2d 936).

7. See, to the same effect, Costen v. Pauline's Sportswear, Inc. (9th Cir. 1968) 391 F.2d 81, 85 & n. 5; Sims v. Mercy Hospital of Monroe (6th Cir. 1971) 451 F.2d 171, 173; Wright & Miller, Federal Practice and Procedure, vol. 5, at 683 (1969).

This was the procedure followed in Barnes v. A. Sind & Associates (D.C. Md.1963) 32 F.R.D. 39, 41, rev. on other grounds, (4th Cir.) 341 F.2d 676, where, after noticing "all parties" that it was treating the motion as one for summary judgment, gave the opposing party the right to "file his counter affidavits within 15 days after he has completed his discovery." In Gould, Inc. v. Chafee (1971) 146 U.S.App.D.C. 206, 450 F.2d 667, 669, where, contrary to the procedure in *Barnes*, the Court had acted without giving the plaintiff the opportunity to rebut the showing of the defendant, the Court reversed a dismissal entered under Rule 12(b)(6), because, in deciding the motion on the affidavits submitted by the moving party, the Court had failed to give the opposing party "appropriate notice" of its right to contest the material facts set forth in the moving papers submitted in support of the motion.

In this case, the District Court did not indicate to the parties that it was treating the 12(b)(6) motion as a motion for summary judgment nor did it provide by appropriate order "reasonable opportunity" for the plaintiff to file any "material made pertinent to such a motion by Rule 56." The plaintiff should have been afforded an opportunity, as the procedure followed in *Barnes* suggests, to employ discovery, in order to counter, if he could, the facts set forth in the defendant's affidavit or to establish a factual basis for his action against the defendant; and this is especially so since the facts on which the defendant predicates its motion in this respect lie peculiarly within the knowledge of the defendant. Moreover, the right to maintain a products liability suit against a dissolved corporation, in process of liquidation under statutory authority, for post-dissolution-accrued claims has received at best limited judicial or textbook consideration.[8] The plaintiff has suggested in argument that, contrary to the defendant's contention in its affidavit submitted, the defendant, despite its dissolution, is not restricting itself to liquidating its business but may be engaged generally in carrying on its regular business. Whether this is a fact and, if a fact, can support this action[9] should await the completion of discovery. Moreover, the Delaware corporate law vests the Chancery Court with discretion to extend the period allowed by Section 278 for suit against a dissolved corporation. 8 Del. Code Ann., § 278.[10] The plaintiff should have the right to inquire whether such an extension has or has not been granted by the Chancery Court. Of course, the affidavit filed by the defendant indicates that none of these points just outlined will prove, after discovery, to sup-

---

8. *See* Hern & Alexander, Effect of Corporate Dissolution on Products Liability, 56 Cornell L.Rev. 865 (1971). In Chadwick v. Air Reduction Company (D.C.Ohio 1965) 239 F.Supp. 247, 251, the right to maintain such a suit against the dissolved corporation was sustained but in Bishop v. Schield Bantam Company, *supra* (293 F.Supp. 94), the right was rejected. Both cases, however, were decided on the language of the individual State statutes.

9. *See*, 19 Am.Juris.2d, § 1648, but *cf*., 16A, Fletcher on Corporations, § 8141 (rev.vol. 1962):
   "Under certain circumstances a corporation may become liable for torts committed after its dissolution, as where a de facto existence continues the corporation so as to carry with it a liability then accruing. Ordinarily, however, a corporation has not even a de facto existence aft-

er the expiration of its charter, and where this is the case, such a liability does not arise. The remedy would be against the individuals committing the wrong."
   *See, also*, Garzo v. Maid of the Mist Steamboat Co. (1952) 303 N.Y. 516, 104 N. E.2d 882, 887:
   "In addition, where, as here, a corporation carries on its affairs and exercises corporate powers as before, it is a de facto corporation as well, and ordinarily no one but the state may question its corporate existence."

10. Whether application to the Chancery Court must be made within the three-year period after dissolution, as allowed under Section 278, *see* Levin v. Fisk Rubber Corp. (1943) 27 Del.Ch. 200, 33 A.2d 546, 548 (decided under an earlier version of the Statute).

port the maintenance of this action against the defendant. And this may well be true but we do not think the plaintiff should be absolutely foreclosed from any reasonable testing of the facts stated in that affidavit by discovery. The cause must accordingly be remanded in order to permit the plaintiff, within a reasonable time fixed by the District Court, to file such counter affidavits or material deemed pertinent to that part of defendant's motion to dismiss that is based on 12(b)(6), after reasonable opportunity for discovery. The discovery should, though, be limited strictly to matters pertinent to this particular ground of the motion.

Remanded with directions.