**In re Edwin Paul WILSON, Debtor.**

**John W. GUINEE, Jr.,
Trustee, Plaintiff,**

**v.**

**Francis E. HEYDT, Dumas Manufacturing Company, Dumas International, Inc., DeRossi International, DeRossi and Sons, Inc., Donald DeRossi, Glen Berry Manufacturers, Inc., Totibogi Trust, Commercial National Bank of Kansas City, Robert Matthew Heydt, James Timothy Heydt, Wash H. Brown, and Security National Bank of Kansas City, Defendants.**

**Bankruptcy No. 84–01415–A.
Adv. No. 86–0124–A.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Aug. 10, 1988.

Daniel M. Lewis, Arnold & Porter, Washington, D.C., and Victor M. Glasberg, Alexandria, Va., for defendant Commercial Nat. Bank of Kansas City.

H. Slayton Dabney, Robert E. Draim, McGuire, Woods & Battle, Richmond, Va., and John T. Tansey, Jane T. Dana, McGuire, Woods & Battle, Washington, D.C., for other defendants.

Lawrence A. Katz, Stephen E. Leach, Steven M. Salky, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, D.C., for plaintiff trustee.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

We are called upon to rule on the defendants' motion to dismiss for the plaintiff's failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), as made applicable to this proceeding by Bankruptcy Rule 7012.

The Trustee in this Chapter 11 case has filed a ten count amended complaint against the thirteen various defendants, although not all defendants are named in each count. The claims at issue arise out of three contracts and the subsequent

agreements and transactions relating to the performance of these contracts. The initial three contracts involve the sale of military clothing, supplies, and equipment to the Directorate of Procurement for the Libyan Arab Armed Forces ("Directorate"). These agreements, attached as exhibits to the complaint, are referred to as "the Benghazi contract", "the SERTE contract" and "the Air Force contract." Counts one, two, four, five, six, eight and nine of the complaint relate to the Benghazi contract, while counts four and eight relate to the SERTE contract. The remaining counts, three, seven and ten, relate to the Air Force contract. Because the Air Force contract related claims are somewhat less complex, we first direct our attention to them.

■ On its face, the Air Force contract, dated January 28, 1980, reveals an agreement between the Directorate and defendant DeRossi International ("DRI"), signed by defendant Francis Heydt in his capacity as Vice President. The Trustee alleges, contrary to the plain language of the Air Force contract, that Francis Heydt and Donald DeRossi were individual parties to this contract, by and through DRI, or DeRossi and Sons, Inc. The Trustee reaches this conclusion by asserting that DRI is "an alter ego of either defendant Heydt or defendant DeRossi or both," implicitly asking this Court to disregard the entity represented in the contract and maintaining that DRI is a "business enterprise" that is one and the same as DeRossi and Sons, Inc., a New Jersey corporation.

The conclusory allegation that DRI is a mere alter ego is supported only by the bare allegation that "either Donald DeRossi or Francis Heydt or both exercise control" over DRI. With this allegation in counts three, seven and ten, the Trustee asks the Court to hold liable parties other than the contracting party, DRI. Although the Trustee uses language that might support piercing a corporate veil, he does not allege that DRI is a corporation. Rather,

he alleges that DRI is a "business enterprise". It is unclear, therefore, on what theory Heydt, DeRossi, and DeRossi and Sons, Inc. allegedly are liable to Wilson. Nevertheless, it is clear that the Trustee seeks to hold other parties liable based on their alleged control of DRI. This pleading provides ample notice to the defendants, subject to proof at trial.

The Trustee further alleges that the Air Force contract was secured as a result of negotiations by the debtor, Edwin Paul Wilson ("Wilson"), for which result defendants Heydt, DeRossi and DRI each agreed to pay a commission of twelve percent of the base price of the contract to Wilson and/or to Services Commerciaux et Financiers Du Moyen—Orient, S.A. ("Services")[1].

■ Count three of the complaint alleges that defendants Francis Heydt, Donald DeRossi and DRI breached their agreement to pay a commission to Wilson and/or Services after Wilson performed his obligation to secure the Air Force contract. DeRossi and Sons, Inc. is allegedly one and the same as the business enterprise DRI and, thus, is a party defendant. If such a commission agreement does exist with Wilson, the Trustee will be entitled to enforce its terms. Therefore, count three properly states a claim and will not be dismissed.

■ Count seven alleges that defendants Francis Heydt, DeRossi, DRI and DeRossi and Sons, Inc. "were unjustly enriched when they refused to pay over to Wilson the commission he had earned by securing the Air Force contract for defendants from the Libyan military." For the Trustee to state an unjust enrichment claim, he must plead that the defendants have received benefits they should not justly retain. *Cleland v. Stadt*, 670 F.Supp. 814, 816 (N.D. Ill.1987); *see Harris v. Sentry Title Co., Inc.*, 715 F.2d 941, 949 (5th Cir.1983), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 514, 83 L.Ed.2d 404 (1984); —— U.S. ——, 108 S.Ct. 74, 98 L.Ed.2d 37 (1987); *see generally* 66 Am.Jur.2d *Restitution and Implied Contracts* § 3 (1973). The complaint makes no

---

1. Although the Trustee has made numerous allegations regarding Services, a former Liberian corporation with its principal place of business in Geneva, Switzerland, these allegations are not pertinent to the Air Force contract issues.

allegations, however, that the contract with Libya was ever performed, enriching these defendants at Wilson's expense or loss. Therefore, count seven fails to state a claim upon which relief can be granted and accordingly will be dismissed.

■ Count ten alleges that defendant Francis Heydt personally made fraudulent and deceitful representations regarding procurement of the Air Force contract upon which Wilson justifiably relied and consequently was damaged. Clearly, this allegation states a cause of action that if true would entitle the Trustee to recover. The defendants have presented no argument to hold otherwise, thus the claim will stand for trial.

The remainder of the complaint is more complex. In passing on a motion to dismiss under Rule 12(b)(6), this Court must accept as admitted all material allegations of fact in the complaint. *Associated Dry Goods Corp. v. Equal Employment Opportunity Comm'n,* 419 F.Supp. 814, 818 (E.D.Va.1976). It is well settled, however, that courts will not accept as true allegations contradicted by exhibits attached to or incorporated in the pleading. *Olpin v. Ideal Nat'l. Ins. Co.,* 419 F.2d 1250, 1255 (10th Cir.1969), *cert. denied,* 397 U.S. 1074, 90 S.Ct. 1522, 25 L.Ed.2d 809 (1970); *Ott v. Home Sav. & Loan Ass'n,* 265 F.2d 643, 646 n. 1 (9th Cir.1958).

■ The Trustee alleges in the remainder of his complaint that the debtor Wilson was a party to four separate agreements: the Benghazi contract, the SERTE contract, and two bond posting agreements designed to facilitate the performance of the Benghazi and SERTE contracts. The exhibits, however, show that Wilson is not named as a party in any of the agreements. The Benghazi and SERTE contracts are between the defunct Liberian corporation, Services, and the Libyan Directorate. Likewise, the exhibits show that the bond posting agreements are between Services and various defendants. Thus, we cannot assume as true the allegations of Wilson's status as a party to each agreement.

■ The Trustee attempts to surmount this hurdle by alleging that Services was the alter ego of Wilson and, therefore, Wilson has individual claims that the Trustee may pursue in this proceeding. In asking this Court to disregard the corporate entity of Services, the Trustee seeks to pierce the corporate veil in reverse. In its customary form, as it is used in counts three and seven above, the alter ego doctrine is an equitable principle employed to hold the shareholder(s) of a corporation liable for corporate acts. *De Witt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.,* 540 F.2d 681, 683 (4th Cir.1976); *see e.g., Steyr–Daimler–Puch of America Corp. v. Marcus,* 852 F.2d 132, 135 (4th Cir.1988) (trustee may assert alter ego claim of debtor-corporation because under Virginia law alter ego claim is property of estate under § 541(a)). Even in the usual application of this principle, courts should proceed with great reluctance and caution. 540 F.2d at 683. Here, however, the Trustee does not wish to place liability on Wilson for injurious acts by Services. Rather, he seeks to assert, in Wilson's name, claims that would otherwise rightfully belong to the corporation, Services. Thus, by seeking to pierce the corporate veil for his own benefit, the Trustee urges this Court to employ "a highly unique and reverse twist to the extraordinary principle [he] ostensibly relies upon." *Love v. Ben Hicks Chevrolet, Inc.,* 655 S.W.2d 574, 576 (Mo.App.1983).

Whether this Court should permit this procedure and allow the piercing of the corporate veil in reverse is the pivotal question at this stage of the proceedings. The Trustee asserts that this issue may not be resolved on a motion to dismiss, and with this we cannot agree. Ordinarily, the decision to pierce the corporate veil is a question of fact to be resolved on the merits. *In re Country Green Ltd. Partnership,* 604 F.2d 289, 292 (4th Cir.1979). Here, however, the Trustee is not applying the alter ego doctrine in the usual way. Instead, he attempts to use a theory implicitly rejected by the Fourth Circuit. Although not applying the "reverse pierce" label, the Fourth Circuit has disclaimed the validity of the Trustee's proposition, in not-

ing that "where an individual creates a corporation as a means of carrying out his business purposes he may not ignore the existence of the corporation in order to avoid its disadvantages." *Terry v. Yancey,* 344 F.2d 789, 790 (4th Cir.1965). Thus, despite the Trustee's contention that Wilson is the alter ego of Services and that Wilson may, therefore, assert Services' claims, merely being the alter ego of one of the parties to a contract does not grant one standing to sue in one's name for wrongs against the corporation. *See In re McGhee,* 80 B.R. 65, 70 (Bankr.E.D.Va. 1987) (incidental beneficiary to contract has no standing to sue for alleged interference with that contract).

As authority for this unusual approach, the Trustee relies primarily on *Crum v. Krol,* 99 Ill.App.3d 651, 54 Ill.Dec. 864, 425 N.E.2d 1081 (1981). The *Crum* case is distinguishable, however. There Crum, the sole shareholder of a corporation, entered into a contract with the defendant for the sale of land on which Crum intended to build a trucking terminal. Prior to closing the sale, Crum moved onto the land and incurred start up expenses, which were paid by the corporate entity. Krol then refused to close and Crum brought an action for breach of contract seeking recovery of the expenses paid by the corporation, and was granted a judgment for the same. On appeal, for the first time, Krol argued that Crum personally could not recover the expenses paid by the corporation, nor could the corporation sue him because it was not a party to the real estate contract. The appellate court declared that Crum's action was proper since the corporation was his alter ego. Despite this conclusion, it is apparent that Crum was entitled to bring a direct action without resort to the extraordinary remedy of applying a reverse piercing of the corporate veil. Crum was a party to the breached contract and properly could assert the damages of a third-party beneficiary. At no time did the appellate court address whether the alter ego corporation could have sued directly on the contract.

Here, Wilson was neither a signatory nor a third-party beneficiary to the contracts at issue. Regardless, the Trustee attempts to assert the alleged damage to Wilson standing in Wilson's shoes. *Crum v. Krol* is not authority, however, for the proposition that Wilson has a direct right of action. Furthermore, if Krol failed to dispute at trial whether a signatory to a contract could assert damages paid by a third-party beneficiary, he may have waived the issue on appeal. Here, the defendants have raised their objections prior to trial. The case cited by the Trustee to support his position, therefore, fails to withstand scrutiny.

Notwithstanding the case law in this jurisdiction, the Trustee maintains also that his position as plaintiff injects into our analysis equitable considerations that distinguish this case from the general rule. The Trustee cites no authority to support this contention, however, and we are not persuaded that the proposed deviation from the established rule is appropriate. The Trustee does submit that any recovery against the defendants would benefit Wilson's creditors, thus fulfilling the purpose of the bankruptcy laws. This argument alone, however, is not compelling. Furthermore, any fraud or improper purpose of Wilson in incorporating Services, as asserted by the Trustee, is irrelevant to our consideration of a reverse pierce of the corporate veil. "[T]he fraud or inequity sought to be eliminated by piercing the veil must be that of the party against whom the doctrine is invoked." W. Fletcher, 1 *Cyclopedia of Corporations,* § 41.20 (Supp. 1987). Piercing the veil on Wilson's behalf in no way eliminates or minimizes any alleged wrongdoing of Wilson. Manifestly, the Trustee stands in the shoes of Wilson, taking all causes of action subject to defenses that could be asserted against Wilson. *Bank of Marin v. England,* 385 U.S. 99, 101, 87 S.Ct. 274, 276, 17 L.Ed.2d 197 (1966); *Miller v. New York Produce Exch.,* 550 F.2d 762, 768 (2d Cir.), *cert. denied,* 434 U.S. 823, 98 S.Ct. 68, 54 L.Ed.2d 80 (1977); 2 *Collier on Bankruptcy* ¶ 323.02[4] (1987). Wilson could not have asserted this action and, therefore, neither should the Trustee be granted such license.

■ Based upon the foregoing, our disposition of the remaining counts in the complaint becomes readily apparent. All the duties allegedly owed to Wilson in the remaining seven causes of action arise out of his alleged status as "alter ego". Counts one and two allege breach of agreements made in connection with the Benghazi contract, agreements clearly made with Services, not Wilson. Count four is similar, except the allegedly breached agreement was entered to facilitate the SERTE contract. Counts five and six allege that various defendants were unjustly enriched at Wilson's expense from transactions related to the Benghazi contract, while count eight makes similar allegations related to the SERTE contract. Again it was Services, not Wilson, that suffered any loss.

Finally, count nine alleges that some of the defendants willfully and maliciously converted to their benefit property of Wilson in connection with the Benghazi ageement. Yet the property at issue was paid to and benefitted Services before Services transferred it to the defendants. Services, however, is not a debtor in this proceeding. Because we decline, as a matter of law, to apply the doctrine of piercing the corporate veil in reverse, we must grant the motion to dismiss counts one, two, four, five, six, eight and nine for failure to state a cause of action. We find beyond doubt that the Trustee can prove no set of facts in support of his claim that would entitle him to relief, thus our action is appropriate. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *In re Herman Cantor Corp.,* 15 B.R. 747, 748 (Bankr.E.D.Va.1981).

In summary, as the complaint now stands, only counts three and ten survive the defendants' motion to dismiss. The only defendants remaining, therefore, are Francis Heydt, Donald DeRossi, DRI, and DeRossi and Sons, Inc. Nevertheless, because the Trustee contends that any defects in his complaint may be cured by joining Services as a party plaintiff, we will consider next whether such an action can save the complaint.

Assuming arguendo that the addition of Services as a party plaintiff could resolve the problem this, however, does not resolve *whether* Services may be added. Services, a Liberian corporation, was formally and legally dissolved on October 29, 1982. Section 11.4 of the Liberian Business Corporation Act provides a three-year winding up period, during which time the dissolved entity continues as a corporate body for the purpose of prosecuting or defending suits. The defendants maintain that because no suit against them was filed in Services' name before or during the three-year winding up period, both Services and the Trustee are barred from filing now. The Trustee, however, contends that the three-year winding up period does not apply to Wilson's alleged independent cause of action. Furthermore, he contends that Section 108(a) of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*) extends the time in which he may file, if the winding up statute is applicable. He argues, therefore, that the suit as filed was timely or, alternatively, that Services may be added as a party.

■ We first consider whether Services may be added as a party plaintiff. At common law, the dissolution of a corporation abated all pending actions by and against it, terminating its capacity to sue or be sued thereafter as well. *Oklahoma Natural Gas Co. v. State of Oklahoma,* 273 U.S. 257, 259, 47 S.Ct. 391, 392, 71 L.Ed. 634 (1927); *Johnson v. RAC Corp.,* 491 F.2d 510, 511–12 n. 3 (4th Cir.1974); *In re Staley,* 43 B.R. 374, 375 (Bankr.W.D.Va. 1984). This rule, however, has been superseded by statutory law in many jurisdictions, including Liberia. Since Services was originally incorporated in Liberia, its capacity to sue or be sued is governed by the law of that country. *See* Fed.R.Civ.P. 17(b) (capacity of corporation to sue or be sued determined by law under which it was organized).

■ The Liberian Business Corporation Act (1976) states in pertinent part:

§ 11.4. Winding up affairs of corporation after dissolution.

1. *Continuation of corporation for winding up.* All corporations, whether

they expire by their own limitations or are otherwise dissolved, shall nevertheless be continued for the term of three years from such expiration or dissolution as bodies corporate for the purpose of prosecuting and defending suits by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, to discharge their liabilities, and to distribute to the shareholders any remaining assets, but not for the purpose of continuing the business for which the corporation was organized. With respect to any action, suit, or proceeding begun by or against the corporation either prior to or within three years after the date of its expiration or dissolution, and not concluded within such period, the corporation shall be continued as a body corporate beyond that period for the purpose of concluding such action, suit or proceeding and until any judgment, order, or decree therein shall be fully executed.

This continuation statute is comparable to those enacted in numerous jurisdictions, including, for example, Florida (Fla.Stat. § 607.297 (1986)), Illinois (Ill.Ann.Stat. ch. 32, para. 12.80 (Smith–Hurd 1984)), Nebraska (Neb.Revised Stat. (Bus.Corp.Act) § 21–20,104 (1987)), and Texas (Tex.Bus. Corp.Act Ann. art. 7.12 (Vernon 1987)). In interpreting the Liberian Business Corporation Act, the Supreme Court of Liberia has looked to similar American statutes and case law. *See, e.g., Eitner v. Sawyer and Flomo,* 26 Liberian Law Reports (LLR) 247 (1977); *Multinational Gas and Petrochemical Company v. Crystal Steamship Corp.,* 27 LLR 198 (1978).

Clearly, any action by or against Services could only have been filed on or before October 29, 1985, three years after Services was dissolved as indicated above. The corporate continuation provision in a winding up statute is an exception to the common law rule. Such provision is not a statute of limitations; rather it affects the very capacity of the corporation to sue or be sued. *Van Pelt v. Greathouse,* 219 Neb. 478, 364 N.W.2d 14 (1985); *Poliquin v. Sapp,* 72 Ill.App.3d 477, 28 Ill.Dec. 615, 390 N.E.2d 974 (1979). Even if Services were named a party to the current suit, such action would be ineffective. The current suit was not filed until March 26, 1986, nearly five months after Services lost its capacity to sue or be sued. Thus Services may not be added as a party plaintiff.

■ The Trustee maintains, however, that the Liberian statute is irrelevant to the instant case. Although the Trustee correctly observes that an action by Wilson as an individual against the defendants would not be subject to the Liberian statute's terms, only counts three, seven and ten of the complaint allege claims of Wilson that are independent from those of Services. As previously noted, the Trustee's contention that Wilson has other such independent claims is contradicted by the exhibits attached to the Complaint. Moreover, although the Trustee asserts that "Wilson [has] an individual right of action against the defendants and this right is based, in part, on the fact that he was the alter ego" of Services, no injury has been alleged to Services, other than that alleged in the counts which remain. Clearly, if Wilson's action is based on his alleged status as alter ego, his action is derivative, not independent, and the Liberian statute seemingly would apply.

The Liberian statute's corporate continuation terms are comparable to those of the Illinois Business Corporation Act of 1983. *See* Ill.Ann.Stat. ch. 32, para 12.80 (Smith–Hurd 1984). The Illinois statute served as an example for the initial draft of the Model Business Corporation Act, upon which many other jurisdictions have based their statutes. *See* Garrett, *Model Business Corporation Act,* 4 Baylor L.Rev. 412, 424 (1952). The Seventh Circuit, construing the winding up provisions of the Illinois statute, has held that derivative actions are barred after exception of the statutory period in which the corporation could sue or be sued. *Canadian Ace Brewing Company v. Anheuser Busch, Inc.,* 629 F.2d 1183, 1185–88 (7th Cir.1980). Several state courts interpreting similar statutes are in accord. *See, e.g., Riley v. Fitzgerald,* 178 Cal.App.3d 871, 223 Cal.Rptr. 889 (1986) (interpreting Texas statute); *McGlynn v.*

*Rosen,* 387 So.2d 468 (Fla.Dist.Ct.App. 1980); *Van Pelt v. Greathouse,* 219 Neb. 478, 364 N.W.2d 14 (1985); *MBC, Inc. v. Engel,* 119 N.H. 8, 397 A.2d 636 (1979). We agree also, finding that the winding up provisions of the Liberian statute apply to derivative actions.

■ Although the corporate life of Services has already expired by the terms of the Liberian statute, the Trustee contends that Section 108(a) of the Bankruptcy Code extends the time in which he may file suit. He argues, therefore, that the suit as filed was timely. To evaluate this position, we must first turn to the language of the statute itself.

Section 108(a) of the Bankruptcy Code provides as follows:

§ 108. Extension of time.

(a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which *the debtor* may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) two years after the order for relief.

11 U.S.C. § 108(a) (1984) (emphasis supplied). Thus, the relevant question is whether the debtor could have brought this action against the defendants before he filed his petition on October 1, 1984. The inquiry is twofold: would such a suit be timely and, if so, could *Wilson* have filed it? Since the winding up period did not expire until October 28, 1985, and Wilson's petition was filed more than one year earlier, the period for bringing suit had not yet expired. This conclusion, however, does not resolve whether Wilson could have filed the suit.

In response to this inquiry, the Trustee reasserts two positions we have rejected. First, he argues, that Wilson had a pre-petition direct cause of action against the defendants, so the winding up statute does not apply. Again this position is untenable given the contradictory nature of the exhibits; Wilson does not have a direct action. Next, the Trustee maintains that Wilson could have sued the defendants pre-petition based on his status as alter ego. Likewise, we are not persuaded that Wilson has the right to disregard the corporate entity of Services at his convenience.

It is evident that Wilson could not have filed this action pre-petition. Even if his alleged status as sole shareholder was true, such status would not permit him to assert Services' claims in his own name. *See Terry v. Yancey,* 344 F.2d 789, 790 (4th Cir.1965); *Picture Lake Campground, Inc. v. Holiday Inns, Inc.,* 497 F.Supp. 858, 863 (E.D.Va.1980); *Judice's Sunshine Pontiac, Inc. v. General Motors Corp.,* 418 F.Supp. 1212, 1219 (D.N.J.1976). Neither could Wilson have asserted the claims on Services' behalf as he had not met the requirements for bringing a derivative suit under Federal Rule of Civil Procedure 23.1. *See* Fed.R.Civ.P. 23.1 (setting forth requirements for derivative actions by shareholders).

In view of the fact that Wilson could not have filed the instant action pre-petition, the provisions of Section 108(a) of the Bankruptcy Code are inapplicable. Even though Wilson allegedly owned 100% of Services, Services has never been a debtor before this Court, nor can it now be a debtor since its corporate existence has terminated. Although Wilson's ownership interest in the stock of Services is property of the estate, the corporate entity itself is not property of the estate. *See In re Loughnane,* 28 B.R. 940, 942 (Bankr.D. Colo.1983) (reverse pierce not permitted).

In view of the foregoing, we must conclude that the defendants' motion to dismiss under Rule 12(b)(6) should be granted with respect to counts one, two, four, five, six, eight and nine because the Trustee is attempting to assert claims of the nondebtor entity, Services. Additionally, count seven must be dismissed because it fails to plead unjust enrichment properly. Counts three and ten, however, do state claims

**217**

upon which relief may be granted. Accordingly, the motion is denied regarding these counts.

An appropriate order will enter.