UNITED STATES of America;
Internal Revenue Service,
Plaintiffs–Appellees,

v.

Edwin Paul WILSON, Defendant–
Appellant,

and

John W. Guinee, Jr., Trustee–Appellee.

No. 91–1615.

United States Court of Appeals,
Fourth Circuit.

Argued May 7, 1992.

Decided Sept. 3, 1992.

As Amended Oct. 29, 1992.

Paul Peter Vangellow, Falls Church, Va., argued, for defendant-appellant.

Lawrence Allen Katz, Tucker, Flyer & Lewis, P.C., Washington, D.C., argued for trustee appellee Guinee.

Robert William Metzler, Tax Div., U.S. Dept. of Justice, Washington, D.C., argued (James A. Bruton, Acting Asst. Atty. Gen., Gary R. Allen, Gary D. Gray, Tax Div., U.S. Dept. of Justice, Washington, D.C., Richard Cullen, U.S. Atty., Alexandria, Va., on brief), for plaintiff-appellee U.S.

Before MURNAGHAN, SPROUSE, and NIEMEYER, Circuit Judges.

## OPINION

NIEMEYER, Circuit Judge:

We are presented with the question of whether a bankruptcy court has jurisdiction to resolve the tax liability of a debtor in bankruptcy, when the same issue is pending before the United States Tax Court and the automatic stay against the tax court's proceeding has been lifted.

Objecting to a settlement agreement resolving the debtor's tax liability, which was reached by the IRS and trustee in bankruptcy and approved by the bankruptcy court, the debtor contends that the bankruptcy court lacked jurisdiction to approve the settlement because (1) before the bankruptcy proceeding was commenced, the debtor's tax liability had been made the subject of a proceeding before the United States Tax Court, and (2) at the time the bankruptcy court approved the settlement, the automatic stay had been lifted, empowering the tax court alone to resolve the claim. The debtor also objects to the bankruptcy court's approval of the resolution of his personal tax liability without his consent, raising personal jurisdiction, due process, and collateral estoppel issues.

Because we conclude that the bankruptcy court possessed jurisdiction to resolve the debtor's tax liability, even though that liability was also the subject of a proceeding pending in the tax court, and because we find no merit to the debtor's other contentions, we affirm.

## I

On April 15, 1983, the Internal Revenue Service issued two notices of deficiency against Edwin P. Wilson in which it determined that Wilson was liable for federal income taxes, interest, and penalties totalling almost $30 million for the taxable years 1977 through 1981. Contesting the amount claimed by the IRS, Wilson filed a petition in the United States Tax Court to redetermine the tax deficiency. While the tax court proceeding was pending, Wilson petitioned for bankruptcy protection under Chapter 11 of the Bankruptcy Code, and shortly thereafter, on December 10, 1984, John W. Guinee, Jr., was appointed trustee of the estate. The IRS filed a proof of claim in the bankruptcy court to recover the taxes assessed, which after amendment reflected a tax liability in excess of $28 million. Pursuant to 11 U.S.C. § 362(a)(8), the tax court proceeding was automatically stayed.

Because the alleged tax liability would consume virtually the entire bankruptcy estate, a determination of that liability became essential to the administration of the estate. The parties therefore agreed to seek an order from the bankruptcy court lifting the automatic stay and to attempt to place the tax liability issues upon the tax court's fall 1986 trial docket. The trustee agreed to move to intervene in the tax court proceeding to protect the estate's interests because, he observed,

> [a] determination of the validity and amount of the Internal Revenue Service tax claims against the debtor is essential to the administration of the estate. Should the tax claims be valid they will absorb virtually the entire estate; if they are invalid or valid only in part there may be sufficient funds to pay all other claims against the estate in full.

The bankruptcy court lifted the stay on March 11, 1986.

After more than three years of pretrial proceedings in the tax court without a trial date being scheduled, the trustee and the IRS began negotiating a settlement of the

tax claim, and on December 14, 1989, they arrived at a settlement which they believed was in the best interest of the estate. The settlement limited the amount that the IRS could collect; provided for full payment of secured and administrative claims and payment to the general and unsecured creditors of 85% of their claims; and discharged Wilson from the post-bankruptcy liability to which he otherwise would have been subjected if the IRS had prevailed on its tax claim. The IRS then moved the bankruptcy court to reinstate the automatic stay of the tax court proceeding, pursuant to the court's equitable powers under 11 U.S.C. § 105, and, in order to obtain court approval for the settlement, filed a complaint seeking a determination of Wilson's tax liability for the years 1977 through 1981 under 11 U.S.C. § 505 and of the dischargeability of that liability under 11 U.S.C. § 523. In lieu of an answer, the trustee filed a stipulation setting forth the terms of the settlement agreement.

While no creditors objected to the settlement, Wilson did. Opposing the government's motion to reinstate the automatic stay and moving to dismiss the complaint, Wilson contended that the bankruptcy court lacked subject matter jurisdiction over the complaint and personal jurisdiction over him, that the settlement violated due process, and that the government was collaterally estopped by the bankruptcy court's earlier decision in an action by the trustee to "pierce the corporate veil in reverse" so that the estate could collect from creditors of Wilson's alleged alter-ego corporation, Services Commerciaux et Financiers Du Moyen–Orient, S.A. ("Services Commerciaux").

Following a hearing, the bankruptcy court concluded that it possessed jurisdiction to determine Wilson's tax liability and the dischargeability of that liability under 11 U.S.C. §§ 505 and 523, notwithstanding the fact that it had previously granted relief from the automatic stay so that Wilson's tax liability could be determined by the tax court. Although the bankruptcy court apparently declined to reinstate the automatic stay, it nevertheless approved the settlement on the ground that it served the best interests of the estate and the creditors. The district court affirmed, holding that the bankruptcy court possessed jurisdiction over the tax claim and finding its decision to be otherwise proper. This appeal followed.

## II

■ Wilson first contends that the bankruptcy court lacked subject matter jurisdiction over the tax claim because the tax court proceeding was pending prior to the filing of the bankruptcy petition. While the contention assumes that one court's jurisdiction over the claim is exclusive, Wilson is unable to identify any statutory language or principle that makes mutually exclusive the jurisdictions of the bankruptcy court and tax court over the tax claim in this case. While the automatic stay imposed by 11 U.S.C. § 362 gives precedence to the bankruptcy court, for purposes of this discussion that provision is not a factor because the bankruptcy court lifted the stay. In the absence of language conferring jurisdiction on a mutually exclusive basis, we conclude that the jurisdiction of each court is determined by the plain meaning of the applicable jurisdiction-conferring statute, and in any given circumstance more than one court may and does have jurisdiction over a claim.

Original jurisdiction over bankruptcy cases is conferred on the federal district courts, *see* 28 U.S.C. § 1334, and the district courts may provide that these cases be referred to bankruptcy judges in the appropriate district, *see* 28 U.S.C. § 157(a). Bankruptcy judges can hear and determine all cases and core proceedings arising under the Bankruptcy Code, subject to review by the district courts under 28 U.S.C. § 158. *See* 28 U.S.C. § 157(b)(1). Core proceedings include, but are not limited to, the "allowance or disallowance of claims against the estate," *see* 28 U.S.C. § 157(b)(2)(B), and "the dischargeability of particular debts," *see* 28 U.S.C. § 157(b)(2)(I). And Section 505 of the Bankruptcy Code specifically addresses the bankruptcy court's jurisdiction to determine certain tax liabilities:

Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

11 U.S.C. § 505(a)(1). Paragraph (2) limits the bankruptcy court's jurisdiction in cases where the claim was adjudicated before the commencement of the bankruptcy proceeding:

The court may not so determine—

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before *and* adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title....

11 U.S.C. § 505(a)(2) (emphasis added).

In this case, Wilson's claim in the tax court had not been adjudicated before commencement of the bankruptcy proceeding, and the IRS's proof of claim and complaint filed in bankruptcy court to recover the amounts assessed properly invoked the jurisdiction of the bankruptcy court to resolve Wilson's tax liabilities. Under 28 U.S.C. § 157(b), and more specifically under 11 U.S.C. § 505(a)(1), this claim constituted a core proceeding within the bankruptcy court's jurisdiction. *Cf. American Principals Leasing Corp. v. United States*, 904 F.2d 477, 481 (9th Cir.1990) (holding that while § 505 clearly permits " 'determination by the bankruptcy court of any unpaid tax liability of the debtor,' " it does not authorize the bankruptcy court to determine tax liabilities of non-debtors) (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 67, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5853; H.R.Rep. No. 595, 95th Cong., 2d Sess. 356, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6312).

Wilson's argument, that the bankruptcy court never possessed jurisdiction because the tax proceeding was pending in the tax court before the filing of the bankruptcy petition, is contrary to the plain language of the statute. The Bankruptcy Code requires bankruptcy courts to defer to the tax court only where the claim was contested *and* adjudicated by the tax court *before* the commencement of the bankruptcy case. *See* 11 U.S.C. § 505(a)(2). Although Wilson's tax liability was contested before the filing of the Chapter 11 petition, it was not adjudicated before that time. While the tax court may also have had jurisdiction to adjudicate Wilson's tax liability, since the automatic stay had been lifted, its jurisdiction was concurrent with that of the bankruptcy court. Thus, we hold that the concurrent jurisdiction of the tax court did not deprive the bankruptcy court of jurisdiction to resolve Wilson's unadjudicated tax claim when the Chapter 11 petition was filed and the IRS filed a proof of claim and a complaint to determine that liability.

### III

Alternatively, Wilson contends that even if the bankruptcy court initially possessed jurisdiction over the tax claim, it lost that jurisdiction when it terminated the automatic stay. In support of this position, Wilson relies on the legislative history of the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2549 (1978), and contends that Congress intended that, when an automatic stay is lifted, the tax court should resolve the debtor's tax liability on the merits of the controversy and that the tax court's decision would bind the debtor respecting any nondischargeable taxes and the trustee respecting the tax claims against the estate.

Pursuant to § 362 of the Bankruptcy Code, the filing of a bankruptcy petition automatically stays "the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor." 11 U.S.C. § 362(a)(8). Section 362(d) provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay" in certain circumstances. 11 U.S.C. § 362(d). Nowhere does the statute state, or even suggest, however, that the bankruptcy court loses jurisdiction when it terminates the automatic stay. *See Explorer*

*Drilling Co., Inc. v. Martin Exploration Co. (In re Martin Exploration Co.),* 731 F.2d 1210, 1214 (5th Cir.1984) ("Termination of the automatic stay ... had no practical effect on the bankruptcy court's authorization to exercise control over [the disputed] property since it remained within the bankrupt's estate."). Moreover, the legislative history on which Wilson relies supports the conclusion that once the stay is lifted, the bankruptcy court retains jurisdiction, *concurrent* with the jurisdiction of the tax court. As stated by the sponsors of the compromise bill, H.R. 8200, 95th Cong., 2d Sess. (1978), which was later enacted as the Bankruptcy Reform Act of 1978,

> In essence, under the House amendment [which stated the compromise between the House and the Senate], the bankruptcy judge will have authority to determine which court will determine the merits of the tax claim both as to claims against the estate and claims against the debtor concerning his personal liability for nondischargeable taxes. Thus, if the Internal Revenue Service, or a State or local tax authority, files a petition to determine dischargeability, the bankruptcy judge can either rule on the merits of the claim and continue the stay on any pending Tax Court proceeding or lift the stay on the Tax Court and hold the dischargeability complaint in abeyance. If he rules on the merits of the complaint before the decision of the Tax Court is reached, the bankruptcy court's decision would bind the debtor as to nondischargeable taxes and the Tax Court would be governed by that decision under principles of res judicata. If the bankruptcy judge does not rule on the merits of the complaint before the decision of the Tax Court is reached, the bankruptcy court will be bound by the decision of the Tax Court as it affects the amount of any claim against the debtor's estate.

124 Cong.Rec. 32414 (1978) (Statement of Representative Edwards), *reprinted in* 1978 U.S.C.C.A.N. 6436, 6492–93; 124 Cong.Rec. 34014 (1978) (Statement of Senator DeConcini), *reprinted in* 1978 U.S.C.C.A.N. 6505, 6562; *see also Begier v. IRS,* 496 U.S. 53, 64–65 n. 5, 110 S.Ct. 2258, 2266 n. 5, 110 L.Ed.2d 46 (1990) ("Because of the absence of a conference and the key roles played by Representative Edwards and his counterpart floor manager Senator DeConcini, we have treated their floor statements on the Bankruptcy Reform Act of 1978 as persuasive evidence of congressional intent.").

The legislative material cited by Wilson only demonstrates that the general purpose of lifting the automatic stay is to allow a matter to be decided by a tribunal with special expertise:

> Undoubtedly the court will lift the stay for proceedings before specialized or nongovernmental tribunals to allow those proceedings to come to a conclusion. Any party desiring to enforce an order in such a proceeding would thereafter have to come before the bankruptcy court to collect assets. Nevertheless, it will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

H.R.Rep. No. 595, 95th Cong., 2d Sess., 341 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6297. This statement of purpose is still consistent with Congress's grant of concurrent jurisdiction to the bankruptcy courts.

In ordinary circumstances, the bankruptcy court might find it prudent and desirable to defer to the specialized tribunal and await the timely resolution of the claim by that tribunal. In this case, however, where the administration of the estate depended on resolution of the tax liability issue and the issue had been pending in the tax court for over three years, the bankruptcy court properly exercised its power to adjudicate the tax liability of the debtor. While the bankruptcy court initially determined, by lifting the stay, to defer to the tax court on the issue, it was well within its power and discretion to assume

responsibility for determining the issue itself when the case was not being resolved in a timely manner in the tax court. That it did not reimpose the stay when requested to do so did not deprive the bankruptcy court of its concurrent jurisdiction to resolve the tax liability of the debtor.

## IV

■ Wilson's remaining challenges to the bankruptcy court's approval of the settlement between the trustee and the IRS are also without merit. He contends that the bankruptcy court lacked personal jurisdiction to determine his tax liability and the dischargeability of that liability. With certain limited exceptions, however, the debtor places all of his or her property within the jurisdiction of the bankruptcy court by filing a bankruptcy petition. *See* 11 U.S.C. § 541(a)(1) (Except as provided in § 541(b) and (c)(2), the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."). Under the terms of the approved settlement agreement in this case, the IRS was limited to recovery from the assets of the estate, and Wilson was not subjected to any further liability.

■ Wilson also argues that the IRS effectuated a taking of his property without due process when it sought and received approval of the settlement agreement without Wilson's "participation and consent." Procedural due process generally requires adequate notice and a hearing before there is a taking of property. *See, e.g., Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). Here, Wilson was afforded all the process that was due. He was served with each pleading, filed two motions, and was represented by counsel at all hearings. Although Wilson opposed the settlement agreement, his consent was not necessary to the approval of the agreement by the bankruptcy judge. *See St. Paul Fire & Marine Ins. Co. v. Vaughn (In re Vaughn),* 779 F.2d 1003, 1010 (4th Cir. 1985) ("Objection by the debtor is not fatal to [the] settlement if 'it is found to be in the best interests of the estate as a whole.'") (quoting *In re Flight Transp. Corp. Securities Litigation,* 730 F.2d 1128, 1138 (8th Cir.1984), *cert. denied* 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985)).

■ Finally, Wilson argues that the IRS was estopped from asserting any tax claims against him because the issue of corporate control, allegedly relied upon by the IRS as the exclusive basis for Wilson's tax liability, had already been decided by the bankruptcy court. In 1986, the trustee instituted an adversary proceeding in the bankruptcy court, claiming, among other things, that Services Commerciaux was the alter ego of Wilson and that the estate was entitled to funds due on contracts entered into in the name of Services Commerciaux. In August 1988, the bankruptcy court dismissed this claim for failure to state a cause of action, reasoning that there was no right of action allowing a party to "pierc[e] the corporate veil in reverse." *Guinee v. Heydt,* 90 B.R. 208, 214 (Bankr. E.D.Va.1988). The court did not decide whether Services Commerciaux was in fact the alter ego of Wilson. Because the issue was not actually decided and, moreover, the IRS was not shown to have been in privity with the trustee in that action, collateral estoppel cannot be applied now to bind the IRS. *See Virginia Hosp. Ass'n v. Baliles,* 830 F.2d 1308, 1311–12 (4th Cir. 1987).

In conclusion, finding no merit to any of Wilson's claims, we affirm the judgment of the district court.

AFFIRMED.