Larry Nathan GAY, Appellant,

v.

Charles WALL, Chief of Police, Virginia Beach Police Department; E.F. Buzzy, Captain and Administrative Assistant, Virginia Beach Police Department; C.D. Hathaway, Captain, Detective Bureau, Virginia Beach Police Department; and R.D. Colley, Detective, Virginia Beach Police Department, Appellees.

No. 84–6363.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 11, 1985.

Decided May 8, 1985.

William P. Williams, Norfolk, Va., for appellant.

Henry W. Austin, Jr., Norfolk, Va. (Willcox, Savage, Dickson, Hollis & Eley, P.C., Norfolk, Va., on brief), for appellees.

Before WIDENER and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

ERVIN, Circuit Judge:

Larry Nathan Gay brought this § 1983 action against Virginia Beach police officers, claiming that they unlawfully arrested and jailed him without probable cause in violation of his due process rights. The defendants filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court considered the motion to dismiss as a motion for summary judgment, *see* Fed.R.Civ.P. 12(b) and 56, and granted summary judgment in favor of the defendants. Gay now appeals. He argues that the district court should not have considered the motion to dismiss as a motion for summary judgment, and that the grant of summary judgment in favor of the defendants was improper. We reverse and remand the case for further proceedings.

## I.

On November 9, 1982, the Naval Air Norfolk Federal Credit Union in Virginia Beach, Virginia was robbed at gunpoint by two men. During the robbery one of the robbers shot and wounded a Virginia Beach police officer. On November 13, 1982, the Virginia Beach police received an anonymous tip that Larry Nathan Gay was involved in the robbery. Two eye-witnesses then identified Gay from a picture line-up as the robber who had shot the police officer. A warrant was issued for Gay's arrest, and in the early morning hours of November 14 he was arrested at his mother's house. The following day a video line-up was made. Two eye-witnesses identified Gay as one of the robbers and two other eye-witnesses did not. Gay was detained in prison from November 13 until December 5, 1982, when another individual, now known to be the actual robber responsible for the shooting, was arrested for the crime.

According to Larry Gay's mother, Sarah Gay, a police officer who searched her home on the day of her son's arrest told her that the police had "not enough proof" and "no case" against Larry Gay. She also alleged that during several visits to her home a police detective told her that he did not believe her son was guilty, that he "had almost lost [his] job by trying to help Larry," and that "[w]hen I find the right person, I'll let Larry go." Similar comments were allegedly made to other family members. It is also alleged that at least one week prior to Larry Gay's release, the Virginia Beach police notified his attorney that Gay's fingerprints did not match those at the scene of the crime.

On March 12, 1984, Larry Gay filed a complaint in United States District Court for the Eastern District of Virginia against Charles Wall, the Virginia Beach Police Chief, and two captains and a detective in the Virginia Beach Police Department. Gay alleged that the defendants had "knowingly, unlawfully, violently, and without 'probable cause'" arrested and detained him. He claimed that the arrest and detention violated his fourth, fifth, sixth and fourteenth amendment rights and constituted tortious false imprisonment under Virginia law. Gay sought compensatory damages of $1,000,000 and punitive damages of $1,000,000.

On April 3, 1984, the defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on substantive and jurisdictional grounds.[1]

---

**1.** The defendants' motion was simply a motion to dismiss, not a motion to dismiss or, in the alternative, a motion for summary judgment. From the record it appears that the defendants

The defendants filed affidavits in support of their motion. On April 6, 1984, Gay initiated discovery, filing interrogatories and a request for production of documents. He also submitted four affidavits. The defendants opposed production of much of the requested discovery.

On April 16, 1984, Gay filed a brief in opposition to the defendants' motion to dismiss. He argued that affidavits should not be considered by the court in ruling on the motion to dismiss, and that consideration of the motion as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure would be "wholly inappropriate at this stage of the proceedings."

In ruling on the defendants' motion, the district court considered the material outside the pleadings submitted by both parties and treated the motion as a motion for summary judgment as provided for in Rules 12(b) and 56 of the Federal Rules of Civil Procedure. The court ruled against Gay on the merits of his constitutional claim on the basis that, under *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), a mistaken arrest and detention pursuant to a facially valid warrant is not unconstitutional. Finally, the court dismissed the state law claim without prejudice.

Gay now appeals, claiming, first, that the district court erred in converting the motion to dismiss into a motion for summary judgment without giving him notice and an opportunity to present pertinent material, and second, that the district court erred in granting summary judgment to the defendants.

## II.

■ Under Rule 12(b) of the Federal Rules of Civil Procedure, when matters outside the pleadings are submitted with a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all

never sought to have the motion to dismiss

parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." In interpreting the requirements of this rule, this court has held that the term "reasonable opportunity" requires that all parties be given " 'some indication by the court ... that it is treating the 12(b)(6) motion as a motion for summary judgment,' with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery." *Johnson v. RAC Corp.*, 491 F.2d 510, 513 (4th Cir.1974) (*quoting Dale v. Hahn*, 440 F.2d 633, 638 (2d Cir.1971)). *See also* C. Wright & Miller, 5 *Federal Practice and Procedure* § 1366 (1969). When a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment. *See, e.g., Portland Retail Druggists Association v. Kaiser Foundation Health Plan*, 662 F.2d 641, 645–46 (9th Cir.1981); *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 392–93 (6th Cir.1975). However, notification that a Rule 12(b)(6) motion may be converted is only one of the requirements of Rule 12. Once notified, a party must be afforded a "reasonable opportunity for discovery" before a Rule 12(b)(6) motion may be converted and summary judgment granted. *Johnson*, 491 F.2d at 515. Such an opportunity was not provided in the case at bar.

■ In this case summary judgment was granted when the plaintiff had barely begun discovery. Gay's initial interrogatories were only partially answered by the defendants. The defendants claimed that much requested discovery was privileged. While Gay filed four affidavits, he was ill-equipped to counter the defendants' affidavits because of the defendants' objections to his preliminary discovery. The plaintiff's objection to the district court's conversion of the Rule 12(b)(6) motion may have been inartful, however its basis is clear. It was the lack of a reasonable opportunity for discovery which made conversion of the Rule 12(b)(6) motion "wholly

treated as a motion for summary judgment.

inappropriate." Because Gay was not afforded an opportunity for reasonable discovery, the district court's treatment of the motion to dismiss as a motion for summary judgment was an abuse of discretion. We therefore reverse the judgment of the district court on this point and remand the case for further proceedings.

### III.

Because we believe that the district court erred in its application of *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), in ruling on the merits of the plaintiff's case, we address the question of the applicability of *Baker* to aid the district court in its disposition of this case on remand. The district court relied heavily upon *Baker* for the proposition that arrest and detention pursuant to a facially valid warrant does not violate the fourth and fourteenth amendments. Because the court found that Gay was arrested pursuant to a facially valid warrant, it dismissed his case on the merits.

*Baker* involved an erroneous arrest due to an understandable problem of mistaken identity. Linnie Carl McCollan's brother Leonard McCollan had a duplicate of Linnie's driver's license which had Linnie's name and Leonard's picture on it. Leonard was arrested on a drug charge and, due to the driver's license, was booked under Linnie's name. He signed documents under Linnie's name, and was released on bail as Linnie. Leonard apparently jumped bail, and an arrest warrant was issued under Linnie's name. When the real Linnie was later stopped for a minor traffic violation, he was jailed pursuant to the warrant. Linnie was detained in Dallas County from December 26 to December 30, and transferred to Potter County, the locus of the warrant, on the 30th. He was detained there until January 2. During this period, Linnie McCollan repeatedly protested that he was innocent. On January 2, Potter County officials compared Linnie's appearance with a photograph of Leonard, and realized that they had the wrong man. 443 U.S. at 140–141, 99 S.Ct. at 2692–2693.

Linnie McCollan later filed a "§ 1983 false imprisonment action" against the Potter County officials claiming that they had intentionally failed to investigate and determine that the wrong man was imprisoned. The Supreme Court found that McCollan's constitutional rights had not been violated. The Court ruled that "a person arrested pursuant to a warrant issued by a magistrate on a showing of probable cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial." 443 U.S. at 143, 99 S.Ct. at 2694. Because McCollan was arrested pursuant to a facially valid warrant, the Court found that his detention did not violate his constitutional rights. Notwithstanding his protestations of innocence, the Potter County officials were not constitutionally required to investigate the validity of McCollan's protests during the three days, including a holiday, that he was in their custody. *Id.* at 143–45, 99 S.Ct. at 2694–95. However, the Court recognized that there might be circumstances in which a failure to investigate innocence over a period of time would violate due process. *Id.* at 145, 99 S.Ct. at 2695.

■ The district court in this case ruled that, under *Baker,* Larry Gay's complaint did not state a cognizable constitutional claim because the court interpreted the complaint as contending "that the defendants kept [Gay] in confinement after the time they should have known he wasn't the perpetrator of the robbery." *Gay v. Wall,* No. 84–174–N, slip op. at 7 (E.D.Va. June 8, 1984). We read Gay's pleadings somewhat differently. This case does not simply claim, as did the plaintiff in *Baker,* that the state officials should have determined through some affirmative inquiry that the plaintiff was innocent. Rather, Gay contends that the defendants had actual knowledge of his innocence, yet detained him until they could "find the right man." Such a claim is not precluded by *Baker,* because that case does not involve actual knowledge of the defendant's innocence,

but rather the failure to take affirmative steps to determine his innocence.

If Gay's allegations are true that the defendants deprived him of his liberty beyond a time when they knew him to be innocent, the defendants' conduct may well be actionable under § 1983. *See Procunier v. Navarette*, 434 U.S. 555, 561–62, 98 S.Ct. 855, 859–60, 55 L.Ed.2d 24 (1978) (a state official "will not be shielded from [§ 1983] liability if he acts 'with such disregard of the [plaintiff's] clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith'" (*quoting Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975)); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 396 (1982).

Accordingly, we reverse the judgment of the district court and remand this case for further proceedings.

REVERSED AND REMANDED.