941 F.2d 1206
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Debbie DAVIS, for herself and as mother and next friend of
the child George Keith Davis, Jr., Plaintiff-Appellant,
v.
DEPARTMENT OF SOCIAL SERVICES OF BALTIMORE COUNTY, Ruth
Massigna, individually and in her official capacity as
Secretary for the Department of Human Resources for
Maryland, Frank Farrow, individually and in his official
capacity as Executive Director of the Maryland Social
Services Administration, Joy Duva, individually and in her
official capacity as the Director of the Office of Child
Welfare Services of the Maryland Social Services
Administration, Bud Nocar, individually and in his official
capacity as Acting Program Manager for Foster Care Services
within the Maryland Social Services Administration, Alma
Randall, individually and in her official capacity as
Program Manager for twenty-four hour group care and
licensing of the Maryland Social Services Administration,
DSS, Jean Cleran, individually and in her official capacity
as Assistant Director of Children's Services for the DSS,
Toni Greenberg, individually and in his official capacity as
Supervisor of Foster Care for DSS, Catherine O'Connell,
(hereafter "Ms. Riley"), Deborah Martin, Barbara Davis, Mary
Kokoska, individually and in their official capacities as
case workers for the DSS, Ken Simonson, Lorraine Simonson,
Defendants-Appellees.
 No. 90-1864.
 United States Court of Appeals, Fourth Circuit.
 Argued April 11, 1991.
Decided Aug. 19, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Norman P. Ramsey, District Judge. (CA-89-592-R)
 Mercedes Casado Samborsky, Joppatowne, Md., for appellant.
 Catherine M. Schultz, Assistant Attorney General, Baltimore, Md. (Argued), for State appellees; J. Joseph Curran, Jr., Attorney General of Maryland, Wendy J. Greenberg, Assistant Attorney General, Baltimore, Md., on brief. John Philip Miller, Kaplan, Heyman, Greenberg, Engelman & Belgrad, Baltimore, Md. (Argued), for appellees Ken and Mary Simonson; Daniel Saul Katz, Kaplan, Heyman, Greenberg, Engelman & Belgrad, Baltimore, Md., on brief.
 Paul W. Grimm, David E. Beller, Jordan, Coyne, Savits & Lopata, Baltimore, Md. (on brief), for appellee Clarren.
 D.Md.
 AFFIRMED.
 Before K.K. HALL, MURNAGHAN and NIEMEYER, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 The case on appeal from the United States District Court for the District of Maryland here presented discloses a plaintiff-appellant who has alleged a sympathetic set of facts, although the choice to proceed under 42 U.S.C. § 1983 rather than state law has led to the result that, despite the existence of one or more colorable claims of due process violations against the defendants, other than the two who were foster parents, even a liberal construction of the complaint in the plaintiff's favor reveals that nearly all of the remaining defendants are immune from suit on the basis of the Eleventh Amendment as applied to officials of the State of Maryland or lack of personal involvement. Those few defendants remaining have not been adequately alleged as having performed in a deliberately indifferent manner.
 
 
 2
 The case arose out of 1) action by the Baltimore County Department of Social Services (BCDSS) in seizing from school George Keith Davis, Jr. (Keith), the minor son of appellant Debbie Davis (Davis), the plaintiff and appellant, and 2) because of serious injuries Keith allegedly sustained while in foster care.
 
 
 3
 The seizure on an emergency basis occurred on April 15, 1986, when Keith was six years old, with appellee Catherine O'Connell (O'Connell), an Intake Officer, in the active and direct role for the BCDSS. Keith was taken from his special education school, Chatsworth, the BCDSS contending that Keith had been improperly physically disciplined by his grandmother.
 
 
 4
 A juvenile court hearing to consider custody was promptly scheduled and took place on April 16, 1986, the very next day following the taking of Keith. Davis appeared at the hearing, at which a master ordered placement of Keith, as a child in need of care and assistance (CINA), in a shelter care setting; i.e., with foster parents selected by BCDSS. The master also ordered that all "reasonable efforts" be "made to make it possible for the child to return home." A supplementary judicial hearing on May 19, 1986, at which Davis was also present, resulted in a similar order.
 
 
 5
 During the ensuing custody by Ken and Mary Simonson, the foster parents selected by the BCDSS, Keith received injuries through contact with another foster child in the Simonsons' care. It was alleged that the Simonsons withheld treatment of the injury. Through the BCDSS, medical care was ultimately provided, although not until, after the passage of several days, the wound had become seriously infected.
 
 
 6
 In September 1986, Keith was returned to the care of Davis and to school.
 
 
 7
 On March 30, 1989, two and one-half years later, Davis, for herself and as Keith's mother and next friend, filed suit under 42 U.S.C. § 1983. Diversity was lacking for instituting state tort law claims in federal court. None have apparently been instituted in a Maryland court. The complaint was amended on June 28, 1989.
 
 
 8
 The amended complaint sought only money damages and named as defendants BCDSS, five BCDSS caseworkers, and a number of BCDSS supervisory employees and State of Maryland Social Service officials (all of whom were sued in official and individual capacities), and the foster parents, the Simonsons. The suit alleged wrongful removal of Keith and injuries sustained by him while in consequent custody, assertedly in violation of 42 U.S.C. § 1983.
 
 
 9
 After discovery was stayed on August 31, 1990, two motions to dismiss were granted, disposing of Davis' case in its entirety. The instant appeal timely followed.
 
 
 10
 Because the case comes to us primarily as a granted motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we review the district court's disposition de novo, assuming that all facts are accepted as Davis has alleged, and that all factual characterizations and inferences support Davis' position. Jenkins v. McKeithen, 395 U.S. 411, 421-22 (1969); Revene v. Charles Co. Comm'rs, 882 F.2d 870, 872 (4th Cir.1989); 5A C. Wright & A. Miller, Federal Practice and Procedure, § 1368 (1990).
 
 
 11
 Nevertheless, to the extent that the district court treated the question of sovereign immunity under the Eleventh Amendment by considering matters outside the pleadings, the disposition by the district court shall be construed as the entry of summary judgment. Gay v. Wall, 761 F.2d 175, 177 (4th Cir.1985). We thus review the Eleventh Amendment question under the summary judgment standard enunciated in Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (moving party is entitled to judgment as a matter of law where non-moving party fails to establish, by affidavits or otherwise, the existence of an element essential to its case and on which it will bear burden of proof at trial). On the Eleventh Amendment issue, Davis did not avail herself of opportunities to plead countervailing facts.
 
 
 12
 It was alleged that, prior to April 15, 1986, Keith resided with his extended family, consisting of his mother, two brothers, his grandmother, Mamie Jefferson, her daughters and a family friend, in Jefferson's home.
 
 
 13
 It was admitted in the complaint that Jefferson had spanked Keith on his buttocks with a strap while he was fully clothed. Keith, his mother and his grandmother, all have denied that any marks were left on him as a result of the spanking. It was alleged that no medical evaluation was made to confirm what, if any, marks there were on Keith. Keith told O'Connell that the spanking by his grandmother did not leave any marks on him and that, the night before, he had fallen from a chair during a fracas with his brother. No charges of abuse or neglect were ever filed against Davis or Jefferson. Two other sons of Davis, siblings of Keith, attended the April 16, 1986 juvenile hearing.
 
 
 14
 No one sought to present testimony through them as to how Keith had been hurt.
 
 
 15
 Keith was taken from school on April 15, 1986 by O'Connell without first talking to Davis or permitting Davis to see her child, and without a visit to her home. O'Connell authorized Keith's placement in emergency shelter care. In that connection BCDSS prepared, and on April 16, 1986, gave to Davis a copy of a CINA petition.
 
 
 16
 The complaint further alleged that Davis, Keith and their family all continually pleaded with O'Connell that Keith be returned to the family home, which was safe for Keith and his brothers and was free from abuse, but that the BCDSS caseworkers refused to return him, and insisted that Davis consent to Keith's foster home placement. Davis and Jefferson also allegedly reported to the BCDSS caseworkers (1) that the Simonsons, as foster parents, did not permit visitation or telephone contact with Keith and (2) that the boy had complained of neglect and abuse in the foster home.
 
 
 17
 There were further allegations that in early July 1986, Keith was injured while in the home of the foster parents, the Simonsons. It was also alleged that, with the knowledge and acquiescence of BCDSS and the caseworkers, the Simonsons permitted the foster children in their care to be violent with each other, and permitted the older children to abuse Keith.
 
 
 18
 The complaint also stated that there was only one parental visit permitted by O'Connell while Keith was in the foster home. It admitted that two other personal visits were supervised at BCDSS. O'Connell was alleged to have visited Davis' home on April 17, 1986 and found the home to be safe for Keith. She, it is claimed, telephoned Davis and told her so, but there was no mention of such a finding on any BCDSS document.
 
 
 19
 On his return home in September of 1986 after his long hospital stay, Keith allegedly needed medical treatment because he suffered from nightmares and bedwetting as a result of the separation from his family.
 
 
 20
 Finally, the fact that Davis and Keith were black and the fact that no white child has ever been placed in foster care in the manner Keith was were combined in an attempt to make out a claim of racial discrimination.
 
 
 21
 Having detailed, at length, the complaints, which are, in the end, to a large part conclusory deductions, summed up in the complaint as amounting to "deliberate indifference," we turn to Davis' assertions of error, bearing in mind that we have before us claims under 42 U.S.C. § 1983 for monetary damages, which are significantly different from state law claims as to what must be pleaded and proved and what relief might be available.
 
 
 22
 We quickly dispose of Davis' first assertion of error by noting that, despite Davis' contentions to the contrary, the district court found, as a matter of law, that the amended complaint set forth facts sufficient to state a section 1983 claim for relief based upon violation of the substantive guarantees of the Due Process Clause of the Fourteenth Amendment in light of the exception to the general rule carved out by the Supreme Court in DeShaney v. Winnebago Co. Dept. of Social Servs., 489 U.S. 189 (1989). Assuming, without deciding, that Davis' complaint successfully states a claim as to section 1983 liability, we need not address Davis' contention that the district court erred in ruling that violation of state statutes did not serve as an alternative basis for a finding of a substantive due process violation.[1]
 
 
 23
 Turning then to the challenges Davis raises to the district court's findings as to immunity from suit under the Eleventh Amendment and official immunities, it must first be borne in mind that, after Keith's return in September 1986, more than two years had elapsed before suit was instituted. Hence, the occasion for injunctive relief had evaporated. As for monetary damages, we are immediately confronted with the fact that the Eleventh Amendment to the Constitution bars all claims for monetary relief against a state and its agencies. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98 (1984). Claims for monetary relief against State officials sued in their official capacities are similarly barred. Brandon v. Holt, 469 U.S. 464, 471-73 (1985); Kentucky v. Graham, 473 U.S. 159, 166 (1985). Nothing has been alleged indicating waiver of the immunity by the state or abrogation by Congress. Welch v. Texas Dept. of Highway and Public Transp., 483 U.S. 468 (1987).
 
 
 24
 In addition, neither a state nor its officials acting in their official capacities are, for 42 U.S.C. § 1983 purposes, persons. Will v. Michigan Department of State Police, 491 U.S. 58 (1989). The district court correctly concluded, therefore, that, to the extent that Davis sought monetary damages against a State agency or State officials and employees acting in their official capacities, the suit was barred. Viewed in that context, it is not surprising that, while there were numerous sweeping allegations which at the Rule 12(b)(6) stage would support against non-immune persons many aspects of the claims Davis has sought to allege, that very strength must not be allowed to obscure certain fatal defects of monetary damage claims against the state or its officials. Money damages against a state or its officials, in the absence of a waiver of sovereign immunity, are simply unavailable.
 
 
 25
 In determining that BCDSS is an arm of the State, the district court relied heavily on uncontradicted affidavits submitted by BCDSS and the other State defendants. Of the agency's budget, 97% of the funds came from the State. Any monetary claims against BCDSS would have to look to the State of Maryland for satisfaction. The district court's conclusion that BCDSS is an arm of the State and as such is immune from a § 1983 suit for monetary damages is correct as a matter of law. The same is true of officials of BCDSS and other State of Maryland Social Service officials sued in their official capacities. (In addition to BCDSS, Davis also named, both individually and in an official capacity, as defendants several officials employed by the state agencies of the Department of Human Resources and the Social Services Administration).
 
 
 26
 Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell v. Dept. of Social Servs., 436 U.S. 658, 690 n. 55 (1978). Thus, a plaintiff seeking to recover on a damage judgment in an official capacity suit must look to the government entity itself. Kentucky v. Graham, 473 U.S. at 166. Because the government entitites here are protected by Eleventh Amendment immunity, the district court correctly held that the employees must be dismissed in their official capacities.
 
 
 27
 Davis' only challenge to the district court's dismissal of those claims barred by the Eleventh Amendment is a procedural one: by considering the appellees' affidavits on the question of immunity from suit against them in their official capacities on Eleventh Amendment grounds, and thus treating the motions to dismiss as motions for summary judgment, Davis, who, given time, produced no factual allegations supporting her position, was nevertheless somehow denied adequate time for discovery on the question of whether BCDSS and its personnel were state or county actors. The argument is without merit.
 
 
 28
 Appellees styled their motion as a motion to dismiss or, in the alternative, for summary judgment.[2] Asserted as a ground for dismissal or entry of summary judgment was the fact that the appellees, as state entities or officials, were immune from suit for damages under the Eleventh Amendment. Accompanying the motion were affidavits setting forth facts upon which the district court relied in finding that BCDSS, its officials, and the other employees of state agencies implicated in the instant action were state officials for Eleventh Amendment purposes. Davis was thus placed on notice that she stood to have summary judgment entered against her on the basis of the Eleventh Amendment if she failed to come forth with countervailing evidence on the "state official" question. See Celotex, 477 U.S. at 322-23; Gay v. Wall, 761 F.2d at 175. Moreover, the district court granted Davis an extension of time within which to file her opposition to the motion, leaving her almost six weeks to request additional discovery on the Eleventh Amendment question, or, at the very least, to file an affidavit pursuant to Federal Rule of Civil Procedure 56(f) averring that summary judgment was inappropriate until such discovery could be had. Instead, Davis filed an opposition to the motion styled as an opposition both to dismissal and to summary judgment, raising no objection to the motion for stay of discovery appellees had filed concurrently with their motion to dismiss or for summary judgment. Consequently, any objection she now raises to lack of opportunity for discovery comes too late. See Dement v. Richmond, Fredericksburg & Potomac R.R. Co., 845 F.2d 451, 453 n. 2 (4th Cir.1988).
 
 
 29
 Next, we consider Davis' contention that the district court erred in extending qualified immunity to the "social workers"[3] in their individual capacities, because such a defense cannot stand in the face of allegations of bad faith and malice.
 
 
 30
 As to those persons, other than O'Connell, named as defendants in their individual capacities,[4] it is well-settled that "[i]n order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.' " Wright v. Collins, 766 F.2d 841, 850 (4th Cir.1985).
 
 
 31
 Turning to the supervisory officials named in the complaint, though such persons may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates, Slakan v. Porter, 737 F.2d 368, 372 (4th Cir.1984), for a supervisor to be held personally liable under section 1983 requires allegations of more than simply "failure adequately to supervise or control any conduct that directly caused the specific deprivation charged." Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1143 (4th Cir.1982). Ordinarily, a plaintiff cannot prove supervisory liability by pointing to a single and isolated incident. Slakan, 737 F.2d at 373.
 
 
 32
 Thus, the district judge correctly framed the issues. In order to maintain a cognizable claim under section 1983 against any of the officials or employees of the various agencies in their individual capacities, Davis had to allege facts that would demonstrate that the officials and employees were personally involved, directly or in a supervisory capacity, in the deprivation of her federally protected rights.
 
 
 33
 No facts whatsoever have been proffered by Davis that could provide the basis for liability for any of the employees and officials named individually, other than O'Connell. As the district court correctly ruled "[s]imply using the phrase 'all defendants' in front of virtually every allegation does not relieve Mrs. Davis of the requirement that she plead facts demonstrating that each defendant named was personally involved in the alleged deprivation of civil rights." Because the district court properly dismissed all claims against all other state employees in their individual capacities, leaving, however, still for discussion O'Connell in her individual capacity, we need not decide the question of qualified immunity as to any appellee other than O'Connell.
 
 
 34
 Unlike the case of other defendants sued in an individual capacity, the amended complaint contains allegations that O'Connell actually was the individual who had Keith taken from school and placed in foster care, and did so without following proper procedure. For example, the amended complaint alleges that at O'Connell's insistence, on April 16, 1986, the very next day after Keith's emergency seizure, the matter came on for hearing in juvenile court, with Davis present. Keith was ordered by the court to be placed in a shelter care on that very day, and a similar order was entered at a subsequent hearing on May 19, 1986. The court further ordered BCDSS to make "all reasonable efforts ... to make it possible for the child to return home." It is alleged that BCDSS, and specifically O'Connell, made no such efforts, despite the court's order. O'Connell, according to the complaint, was restricted in her involvement to the events related to the seizure of Keith.
 
 
 35
 On the other hand, while Davis has now alleged Keith's desire to return home, the availability of relatives in whose care Keith could be properly ordered, the denial of visitation rights, and other complaints (including ones of mistreatment at the hands of two of the defendants, Ken and Mary Simonson, the foster parents with whom Keith was placed, alleging that, with the permission of BCDSS, the Simonsons allowed violence and abuse to Keith by other older foster children), those objections do not appear to extend to O'Connell. Nor were they meaningfully raised at either of the two juvenile court hearings.
 
 
 36
 In light of the foregoing, while we agree with the district court's conclusion that O'Connell was amenable to suit in her individual capacity, the question remains of whether a finding of qualified immunity as to her was proper.
 
 
 37
 The district court found O'Connell immune individually because allegations of actions, or inactions, taken by O'Connell "are sufficiently analogous to actions of a prosecutor, and thus Ms. O'Connell is afforded absolute immunity for any liability arising from this conduct." For that proposition, the district court cited Vosberg v. Department of Social Servs., 884 F.2d 133 (4th Cir.1989). We would note, however, that at least one of Davis' allegations may place O'Connell's conduct beyond the reach of Vosberg. There, we were careful to emphasize: that our grant of absolute immunity applies only to those activities of social workers that could be deemed prosecutorial. We in no way intend our decision to be read as holding that such workers are immune from liability arising from their conduct in investigating the possibility that a removal petition should be filed. Indeed, any such holding on our part would ... be in direct conflict with the other appellate decisions addressing that question.
 
 
 38
 Id. at 138 (citation omitted). Because Davis alleged that O'Connell failed to visit the Davis home before instigating the seizure of Keith, it may be that only a part of the actions alleged to have been taken were properly protected by absolute immunity.
 
 
 39
 In order to evaluate the applicability of qualified or good faith immunity to any of O'Connell's actions not covered by absolute immunity, we turn to the test from Judge Phillips' concurrence in Collinson v. Gott, 895 F.2d 994, 998 (4th Cir.1990):
 
 
 40
 [F]irst ... identify the specific constitutional right allegedly violated, then ... inquire whether at the time of the alleged violation it was clearly established, then further ... inquire whether a reasonable person in the official's position would have known that his conduct would violate that right.
 
 
 41
 O'Connell's conduct may indeed be evaluated according to Judge Phillips' formulation. Davis has alleged that she was deprived of her right to due process before having her parental rights abrogated. The fundamental liberty interest in parental rights is well established; see, e.g., Stanley v. Illinois, 405 U.S. 645, 651 (1972); as are the general parameters of procedural due process. Mathews v. Eldridge, 424 U.S. 319, 335 (1976).
 
 
 42
 However, the facts alleged in the amended complaint filed by Davis do not allege such willful misconduct or deliberate indifference that it may be deemed that a reasonable person in O'Connell's position would have known that her conduct would violate Davis' constitutional rights. Although in her appeal brief Davis has asserted that O'Connell lied to the juvenile court and actively misrepresented the activities of her agency, Davis' complaint and her affidavit[5] filed in response to the motion for dismissal only allege failure adequately to investigate and other similar omissions. Had active misrepresentation by O'Connell been spelled out in the complaint, the posture of the case might take on a different aspect. However, such was not the case. O'Connell's actions were discretionary; she was never put on notice that the allegedly improper actions were violative of federal constitutional rights, and thus the suit against her was properly dismissed.[6] We emphasize that we are dealing with a suit brought under 42 U.S.C. § 1983. We are not involved in questions of state tort law.
 
 
 43
 For all of the foregoing reasons, the judgment of the district court
 
 
 44
 is
 
 
 45
 AFFIRMED.
 
 
 
 [1]
 The only parties to which our assumption would not extend would be the Simonsons, the district court having found that, because they were private actors, the Simonsons could not be amenable to suit under section 1983, which may only be brought against persons acting under color of state law. See Lugar v. Edmonson Oil Co. Inc., 457 U.S. 922, 935 (1982). Davis has not challenged the district court's dismissal of the suit against the Simonsons in her brief, and, in the absence of exceptional circumstances, not present here, we need not consider the issue. Buffington v. Baltimore Co., 913 F.2d 113, 121 (4th Cir.1990); 9 Moore's Federal Practice p 228.02[2-.1]. Moreover, if we assume that, based on West v. Atkins, 487 U.S. 42, 55-56 (1988), the Simonsons were state actors by analogizing the foster care parents here, because Keith, in close custody, was not free to seek attention from others, to a physician who, by contract, treated prisoners (a claim not advanced on behalf of Davis), nevertheless deliberate indifference was attempted to be shown only by conclusions, not substantiated by descriptive allegations of action or inaction by either of the Simonsons
 
 
 [2]
 The separate motion to dismiss filed by the Simonsons is not at issue here
 
 
 [3]
 For reasons discussed infra, the only "social worker" amenable to suit in an individual capacity, and thus the only person to which the district court extended qualified immunity, is appellee O'Connell
 
 
 [4]
 Ruth Massinga, Frank Farrow, Joy Duva, Bud Nocar, Alma Randall, Toni Greenberg, Jean Clarren, Mary Kokoska, and Debra Martin. It appears that defendant Deborah Riley, a BCDSS case worker whose name appeared on the original complaint, was not included in the amended complaint as the result of a typographical error. In light of the analysis which follows, the omission is of no moment, because the analysis is equally applicable to Riley, as well as to all the other BCDSS social workers
 
 
 [5]
 Although a Rule 12(b)(6) motion for dismissal only tests whether the claim has been adequately stated in the complaint, the rule also provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." Gay v. Wall, 761 F.2d at 177. The affidavit was apparently presented and not excluded. Accordingly, to afford Davis all reasonable consideration, we have considered her affidavit in support of her complaint
 
 
 [6]
 Indeed, complaint was made of the failure of state defendants to remedy excessive caseloads for foster care workers in the BCDSS which prohibited provision of adequate care and service to Keith. Davis' allegations in that regard are rather for, than against, O'Connell individually