UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

J. B. Piner; Judy Brown; Stephen
C. Byrd; William Clemmons;
Thomas E. Grady; Norman Horne;
Stevens McLean; Jeffery L.
Stealer; C. D. Stokes; James H.
Webb; Larry Whitley, on behalf of
themselves and all others similarly
situated,
            *Plaintiffs-Appellants,*

                v.

E. I. DuPont De Nemours &
Company; The Board of
Benefits and Pensions of E. I.
DuPont De Nemours; DuPont
Pension and Retirement Plan,
            *Defendants-Appellees.*

No. 00-1082

Appeal from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
James C. Fox, District Judge.
(CA-99-48-7-F)

Argued: September 25, 2000

Decided: November 14, 2000

Before WIDENER and LUTTIG, Circuit Judges, and
Jackson L. KISER, Senior United States District Judge
for the Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Fred Thurman Hamlet, Sr., Greensboro, North Carolina, for Appellants. James Patrick McElligott, Jr., MCGUIRE, WOODS, BATTLE & BOOTHE, L.L.P., Richmond, Virginia, for Appellees. **ON BRIEF:** David F. Dabbs, MCGUIRE, WOODS, BATTLE & BOOTHE, L.L.P., Richmond, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Piner, et al., ("appellants") sued their employer, E.I. DuPont De Nemours and Company ("DuPont"), for alleged violations of the Federal Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, on claims related to DuPont's implementation of an enhanced benefits plan, the Voluntary Separation Program Prime ("VSP Prime"), in which appellants were not selected to participate. The district court granted summary judgment for DuPont. For the reasons that follow, we affirm.

I.

Appellants are employees and former employees of DuPont's Cape Fear facility in Leland, North Carolina. All appellants are participants in DuPont's tax-qualified pension plan, the Pension and Retirement Plan ("P&RP"), which provides pension and other benefits, including retiree health benefits, for eligible employees. These participants are entitled to a pension benefit calculated in accordance with defined formulas based on length of service, age at retirement, and average monthly pay.

DuPont began downsizing its workforce and, in order to encourage early retirements and separations, the company implemented —

within the P&RP — several incentive voluntary separation programs ("VSPs"). The purpose of these VSPs was to reduce positions at the Cape Fear site by encouraging employees to separate or retire early. The VSPs were implemented by plan amendments to the P&RP and were part of, and funded by, the P&RP Trust. Any qualified employee "who voluntarily elect[ed] to retire or separate under the incentive program provided" by the VSPs contained within the P&RP received enhanced severance benefits (if not entitled to early retirement benefits), or, for "qualified employees who meet the age and service requirements for an Optional Retirement," enhanced pension benefits. J.A. 191-92.

While ERISA itself does not include non-discrimination rules, the VSP benefits were required to comply with the complex non-discrimination rules applicable under section 401(a)(4) of the Internal Revenue Code because the P&RP is a tax-qualified retirement plan. As such, VSP benefits were limited to a non-discriminatory group of employees. Consequently, DuPont could not utilize the VSPs within the P&RP to encourage the separation or early retirement of all employees it wished to separate voluntarily.

In order to provide enhanced benefits that could not be offered under the P&RP or its VSPs, DuPont created "VSP Prime," offered at "management discretion," J.A. 110, 113, for "designated employees," J.A. 110; *see also* J.A. 118 (summary plan description). Unlike the original VSPs, VSP Prime did not involve a plan amendment to the P&RP and was not part of the P&RP. Rather, VSP Prime was an entirely separate plan, intended for application in those instances where use of the regular VSPs was "inappropriate/impossible," but where DuPont nonetheless wanted to further downsize its workforce to eliminate excess employees. J.A. 111. Employees selected to participate in VSP Prime also remained participants in the P&RP, and retained the defined pension benefits they had accrued under the P&RP.

After appellants were not selected to participate in VSP Prime, they filed suit complaining that the "benefits and features of 'VSP Prime' were not made known or available to all Cape Fear employees," Appellants' Br. at 8, and that VSP Prime was funded by the P&RP.

The district court disagreed and granted summary judgment to DuPont.

## II.

Appellants argue that the district court erred in granting summary judgment to DuPont on their ERISA claims. Repeating their claims made before the district court, they contend that DuPont breached its fiduciary duty under section 404(a)(1)(D) of ERISA to administer retirement plans for the "sole and exclusive benefit of the participants and beneficiaries," by granting enhanced pensions to select upper management employees through the VSP Prime plan and by funding the VSP Prime plan with funds from the P&RP Trust. J.A. 15-18. Appellants further claim that DuPont's failure to provide VSP Prime plan documents violates the requirement under section 104(b)(4) of ERISA that an administrator "shall upon written request of any participant or beneficiary" furnish the summary plan description and "other instruments under which the plan is established or operated."

The district court held that the claim under section 404(a)(1)(D) of ERISA did not survive summary judgment because VSP Prime was "by its terms and in fact, a separate benefit paid from general corporate assets [so that] there is no factual predicate to support the [appellants'] substantive ERISA claim." J.A. 292. Moreover, because it was undisputed that appellants are not participants in VSP Prime, the district court held that the claim for statutory penalties under section 104(b)(4) also failed because appellants lacked standing to demand documents related to VSP Prime, and because the circumstances did not warrant the imposition of statutory penalties with regard to the P&RP documents. We agree with the district court.

## A.

We address first appellants' contention that the "discriminatory" availability of VSP Prime somehow constitutes a breach of ERISA. Appellants offer no authority for this argument, a fact which is hardly surprising given that ERISA nowhere requires that benefits offered to some employees must be offered to all employees or even that a pension be provided at all. Rather, ERISA requires only that an employee be provided those benefits set forth in the pension plan in which he,

or she, is a participant. While appellants are participants in the P&RP, appellants were not selected to participate in VSP Prime. Accordingly, appellants have no "right" — statutory, contractual, or otherwise — to the enhanced benefits provided by VSP Prime. Moreover, appellants fail to articulate how, if at all, the fact that some employees received enhanced benefits under VSP Prime affects the benefits to which appellants are entitled under P&RP. ERISA simply does not prohibit an employer from offering some employees and not others access to separate, additional plans with enhanced benefits. Consequently, appellants wholly fail to allege any redressable injury resulting from the selective availability of VSP Prime.

Furthermore, while appellants allege in their complaint that VSP Prime was funded by the P&RP Trust, J.A. 16, this unsupported allegation is directly contradicted both by DuPont's affidavits and by the VSP Prime documents. Appellants' claim that VSP Prime is funded by the P&RP Trust rests entirely on language in a memorandum regarding the VSP Prime incentive at J.A. 111, which states in pertinent part that "[i]ncentive is paid from operating expense and regular accrued benefit from the Pension Trust." Appellants contend that this reference to payment of accrued benefit from the Pension Trust creates a genuine issue of material fact because it is in conflict, they insist, with the affidavit of Anne M. Cole, DuPont's Manager of Benefits, which states "VSP Prime benefits were paid from DuPont's general corporate assets or operating funds." J.A. 140.

Even assuming a facial conflict between these two statements, a conflict we do not concede, the need to resolve actual conflicts and ambiguities in the light most favorable to the party opposing summary judgment does not require that we afford language a meaning divorced from relevant facts in order to *create* an ambiguity. And, as the record makes clear, VSP Prime, by its own terms, does not provide a "regular accrued benefit," so that the only accrued benefits paid from the P&RP Trust were those required and payable under the terms of the P&RP. These accrued benefits from the P&RP are relevant to VSP Prime *only* insofar as they are used as a figure from which the VSP Prime incentive is calculated and adduced:[1] VSP

---

[1]Furthermore, the VSP Prime plan summary clearly states that the lump sum payments are "not from a qualified plan" (which the P&RP is),

Prime pays an amount that is "the actuarial equivalent of [an employee's] pension benefit determined under Section XI of the Pension and Retirement Plan, less the normal pension benefit determined under the Pension and Retirement Plan." J.A. 118.

In final clarification of the difference between the VSP incentive on the one hand, and accrued benefit under the P&RP on the other, VSP Prime provides only a lump sum payment, payable in one or two installments, as an incentive for the early separation and retirement of employees specifically invited to participate. It is not, and does not purport to be, a pension plan paying *any* "regular accrued benefit."[2] J.A. 118-19. Consequently, appellants' reliance on a passing reference to accrued benefits under the Pension Trust as singular evidence that the VSP Prime is funded by the Pension Trust is, at best, misplaced. We need not, and do not, consider such unsupported speculation as evidence of a controverted fact sufficient to withstand summary judgment. *See Ash* v. *United Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986). Ergo, we agree with the judgment of the district court that there is no evidence that VSP Prime is funded by the P&RP Trust and, for the reasons stated above, we affirm the grant of summary judgment to DuPont on appellants' claim for breach of fiduciary duty under section 404(a)(1)(D) of ERISA.

B.

Appellants also contend that the district court erred in failing to award them statutory penalties under section 104(b)(4) of ERISA for DuPont's failure to provide requested documents. However, the claims under section 104(b)(4) lack at least one factor necessary for

---

*compare* J.A. 25 *with* J.A. 150, that VSP Prime is "in addition to any pension rights for which the employee may be eligible," J.A. 118, and that "the payment under this Program is payable from the Company's general assets, not from the P&RP Pension Trust Fund." J.A. 118-19.

[2]It remains undisputed that "[t]here was no enhancement for VSP Prime participants to any benefit paid from the DuPont Pension and Retirement Plan (P&RP) Trust. VSP Prime participants remained eligible for the same benefits under the P&RP that they were eligible for without regard to VSP Prime, no more, no less." J.A. 140 (Affidavit of Anne Cole).

relief, and the district court clearly acted within its discretion. For, while section 104(b)(4) requires that, upon written request of a participant or beneficiary, an administrator "shall" furnish the summary plan description and "other instruments under which the plan is established or operated," section 502(c) of ERISA provides the exclusive remedy for an administrator's failure or refusal to comply with such requests. And, as provided for in section 502(a)(1)(A), a civil action may be brought "for the relief provided for in subsection (c)" *only* by a plan "participant" or "beneficiary." None of the appellants were invited to participate in VSP Prime and, consequently, they are not VSP Prime participants as defined in ERISA: "'[P]articipant' means any employee or former employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer." 29 U.S.C. § 1002(7) (§ 3(7) of ERISA). *See Stanton* v. *Gulf Oil. Co.*, 792 F.2d 432, 435 (4th Cir. 1986) (citing cases). Because appellants were never covered by VSP Prime, the district court correctly held that DuPont had no duty to provide them information about it, and appellants have no standing to file suit or claim statutory penalties with respect to it.

To the extent that appellants allege a failure to provide P&RP documents, Pier's statement that he "verbally requested a plan description, the plan document, and the IRS qualification number," J.A. 138, also fails to support a right to statutory penalties, because the request for P&RP documents was not in writing, as section 104(b)(4) requires. Moreover, the later affidavit of DuPont's Human Resources Manager, Shelby Harper, specifically stated that a copy of the P&RP documents was sent "by internal plant mail" within two weeks of an oral request by Piner, and that Piner did not inform her for two years that he had not received a copy of the P&RP documents, at which time she presented another copy of the P&RP plan document to him. J.A. 141-42. Even if we were to determine, contrary to any common-sense reading of the record, that the request for P&RP documents *was* in writing, we would nonetheless find that the district court did not abuse its discretion in declining to impose a statutory penalty based on the facts of this case. The district court's judgment with respect to both the VSP and P&RP documents is affirmed.

## III.

We are similarly unpersuaded by appellants' claim that the district court abused its discretion by ruling on DuPont's motion for summary

judgment without providing an opportunity for additional discovery. Appellants argue that the district court erred in converting DuPont's Rule 12(b)(6) motion to dismiss into a motion for summary judgment without providing appellants notice of the conversion and a reasonable opportunity to conduct discovery.

While "reasonable opportunity" requires notice that the court is "treating the 12(b)(6) motion as a motion for summary judgment, with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery," *Gay* v. *Wall*, 761 F.2d 175, 177 (4th Cir. 1985), it does not require formal notification by the court. And, in this case, appellants had ample notice that DuPont's motion was a motion for summary judgment. First, the motion caption was "Defendant's Motion to Dismiss [pursuant to 12(b)(1) and/or 12(b)(6)] *or in the Alternative* for Summary Judgment." J.A. 21-A (emphasis added). Additionally, attached to the motion were an affidavit and 110 pages of exhibits, J.A. 22-132, and DuPont filed additional affidavits with exhibits two months later. J.A. 140-290. Moreover, appellants' response to DuPont's motion was captioned "Plaintiffs' Response and Memorandum in Opposition to Defendants' Motion to Dismiss, *or In the Alternative for Summary Judgment*," and referenced DuPont's affidavit and the exhibits attached thereto. J.A. 135 (emphasis added). Finally, appellants also attached an affidavit to *their* response. J.A. 137-9.

This case, in which appellants were represented by a licensed attorney, is directly controlled by *Laughlin* v. *Metropolitan Washington Airports Authority*, 149 F.3d 253 (4th Cir. 1998), where, on facts which exactly mirror the notice extant in this case, the court found both that "notice was ample," and that Fed. R. Civ. P. 12(b) does not impose on the court "an obligation to notify parties of the obvious." *Id*. at 261.

Despite having ample notice that the motion was one for summary judgment and almost three months between receipt of DuPont's motion and the court's grant of summary judgment to DuPont, appellants failed to submit an affidavit under Fed R. Civ. P. 56(f) explaining why an opposing affidavit could not be filed without additional discovery. Appellants' procedural default in failing to file such an

affidavit is dispositive of their claim that they had inadequate opportunity for discovery:

> [A]n appellate court will not overturn a district court's grant of summary judgment on bald assertions of inadequate discovery when the party did not make an appropriate motion under Rule 56(f).

*Laughlin*, 149 F.3d at 261. For the above reasons, and especially in light of appellants' inability to articulate — even at this late date — the specific discovery it would seek given the opportunity, we decline to find that the district court's consideration of the motion for summary judgment without formal notice or additional time for discovery constitutes an abuse of discretion.

## *CONCLUSION*

For the reasons stated herein, the judgment of the district court is affirmed.

*AFFIRMED*