T.C. Memo. 1998-403

UNITED STATES TAX COURT

CAROLYN M. FANKHANEL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2835-95.                    Filed November 12, 1998.

P failed to file returns for 11 years. P claims that R's notice of deficiency constituted a "naked assessment", that she is entitled to additional dependency exemptions for some years, that she received no interest income on child-support arrearages, that she had additional rental property connected expenses, and that she is not liable for additions to tax.

<u>Held</u>: R's determination of deficiencies is not arbitrary and, thus, is not a naked assessment. <u>Held</u>, <u>further</u>, sufficient evidence supports R's determination of unreported income. <u>Held</u>, <u>further</u>, P received interest on child-support arrearages. <u>Held</u>, <u>further</u>, P failed to prove her entitlement to additional dependency exemptions. <u>Held</u>, <u>further</u>, P failed to prove additional rental-property-connected expenses. <u>Held</u>, <u>further</u>, P is liable under secs. 6651(a)(1) and 6654(a), I.R.C., additions to tax. <u>Held</u>, <u>further</u>, on Court's own motion, a penalty in the amount of $5,000 is imposed under sec. 6673(a)(1), I.R.C.

Carolyn M. Fankhanel, pro se.

Charles Baer, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


HALPERN, Judge: By notice of deficiency dated November 21, 1994 (the deficiency notice), respondent determined deficiencies in petitioner's Federal income taxes, and additions to tax, as follows:

| | | Additions to Tax | |
|---|---|---|---|
| Year | Deficiencies | Sec. 6651(a)(1) | Sec. 6654(a) |
| 1983 | $7,892 | $1,973 | $483 |
| 1984 | 2,622 | 656 | 165 |
| 1985 | 27,556 | 6,889 | 1,579 |
| 1986 | 9,535 | 2,384 | 461 |
| 1987 | 1,941 | 485 | 104 |
| 1988 | 3,601 | 900 | 232 |
| 1989 | 3,892 | 973 | 263 |
| 1990 | [1]98 | 62 | – |
| 1991 | 1,398 | 350 | 80 |
| 1992 | 178 | 100 | – |
| 1993 | 8,689 | 2,172 | – |

[1]In 1990, $36 was withheld from wages received by petitioner and was submitted to the Internal Revenue Service. Thus, the balance of tax that respondent claims is due from petitioner for that year is $62.

The issues for decision are whether (1) respondent's notice of deficiency is arbitrary, (2) respondent bears the burden of proof with respect to items of unreported income, (3) petitioner may claim personal exemption deductions on account of her two sons, (4) petitioner must report interest payments with respect to child-support arrearages, (5) petitioner must report items of income received in kind, (6) petitioner is entitled to additional

deductions on account of rental real estate related expenditures, and (7) the additions to tax apply.  On our own motion, we also decide that petitioner must pay a penalty under section 6673(a)(1) on account of proceedings instituted primarily for delay and for taking groundless positions.

Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Introduction

The parties failed to stipulate any facts. They have, however, stipulated to certain exhibits, and those exhibits are incorporated herein by this reference.[1]  Certain matters are

---

[1]   In part, Rule 151 provides as follows:

RULE 151. BRIEFS

　　　　*　　*　　*　　*　　*　　*　　*

(e) Form and Content: * * *

　　　　*　　*　　*　　*　　*　　*　　*

  (3) * * *  In an answering or reply brief, the party shall set forth any objections, together with the reasons therefor, to any proposed findings of any other party, showing the numbers of the statements to which the objections are directed; in addition, the party may set forth alternative proposed findings of fact.

  Petitioner failed to file an answering brief.  Because petitioner failed to file an answering brief, petitioner failed to object to any of respondent's proposed findings of fact.
(continued...)

deemed admitted by petitioner pursuant to Rule 90; those matters also are incorporated herein by this reference.

## Petition

At the time petitioner filed the petition in this case, she resided in Bristol, West Virginia.

## Failure to File

Petitioner failed to file Federal income tax returns for the 11 taxable (calendar) years in issue (1983 through 1993).

## Introduction to Petitioner's Income Producing Activities

Petitioner lived in Colorado from 1978 until November 1989, when she moved to Florida. Petitioner obtained a Colorado real estate salesperson's license in 1978 and worked for various real estate agents in Colorado from then until 1984, when she obtained a Colorado real estate broker's license. She then formed her own real estate company, Fankhanel and Associates, which employed two to four persons and provided petitioner with an income until she left Colorado in 1989. During the time she lived in Colorado, petitioner also owned several pieces of rental real estate, engaged in real estate development, and was a partner in a plant store. Petitioner sold her Colorado real properties when she left Colorado.

---

[1](...continued)
Accordingly, we must conclude that petitioner has conceded respondent's proposed findings of fact as correct except to the extent that petitioner's opening brief contains proposed findings clearly inconsistent therewith. See, e.g., Estate of Freeman v. Commissioner, T.C. Memo. 1996-372.

Petitioner moved to Florida in November 1989. From then through 1993, petitioner engaged in various income-producing activities. Petitioner earned limited income in 1990. For a period of 9 months, beginning in October 1991, petitioner worked as a real estate and money broker in Orlando, Florida. During 1991, 1992, and 1993, petitioner received various payments in kind for legal services and lobbying activities. During 1991, 1992, and 1993, petitioner also received payments of interest with respect to child support arrearages.

Specifics of Petitioner's Income-Producing Activities

1983

Petitioner deposited in excess of $36,000 in her bank accounts.

Petitioner filed a verification of employment form with Waterfield Mortgage Co. in 1984 that stated that she was employed by "FRCC" and received base pay of $36,500 from her job in 1983.

Petitioner jointly purchased real property at 2272 Bannock, Denver, Colorado, with Terry Harper and collected gross rental income of $4,800 from that property. Petitioner and Mr. Harper split the rental income on a 50-percent basis.

1984

Petitioner filed a verification of employment form with Waterfield Mortgage Co. that stated that petitioner's base pay for 1984 from "FRCC" was $36,000.

Petitioner received rental income of $10,463 from real property in Denver, Colorado.

## 1985

Petitioner stated in a financial statement filed in 1986 with South Denver National Bank (SDNB) that she received $48,000 in gross commissions in 1985 from Fankhanel and Associates as an investment broker.

Petitioner received rental income of $13,950 from real property in Denver, Colorado.

Petitioner sold her partnership interest in Tiara Apartments Limited Partnership for a recognizable gain of $66,667.

## 1986

Petitioner stated in a financial statement filed in 1987 with SDNB that she received $50,000 in salary and commission income in 1986.

Petitioner received a commission check in the amount of $32,500 and deposited $23,500 of that amount in Landmark Bank on January 28, 1986.

Petitioner received rental income of $13,950 from real property in Denver, Colorado.

## 1987

Petitioner deposited at least $20,072 in her bank accounts.

Petitioner stated in a financial statement filed in 1987 with SDNB that, as of the date of the statement, she was employed as a real estate broker with an annual income of $50,000.

Petitioner received rental income of $8,754 from real property in Denver, Colorado.

## 1988

Petitioner deposited at least $27,780 in her bank accounts.

Petitioner received rental income of $4,464 from real property in Denver, Colorado.

## 1989

Petitioner deposited at least $16,101 in her bank accounts.

Petitioner received rental income of $1,860 from real property in Denver, Colorado.

Petitioner exchanged real estate commissions due her for a mobile home in Gamby, Colorado, with an assessed value of $2,140.

## 1990

Petitioner deposited at least $6,680 in her bank accounts.

Petitioner received nonemployee compensation of $694 from CFI Hospitality Group, Inc.

Petitioner received employee compensation of $475 from Island One, Inc.

## 1991

Petitioner deposited at least $3,526 in her bank accounts.

Petitioner received $3,043 in interest with respect to child support arrearages.

Petitioner performed legal research for Mary Ann Smania in exchange for room and board.

For 1991, the average expenditure for a one-person household for food was $2,283, and the average expenditure for housing for one person was $6,143.

## 1992

Petitioner deposited at least $5,711 in her bank accounts.

Petitioner received $7,085 in interest with respect to child support arrearages.

Petitioner received rent free use of a room in exchange for legal research.

## 1993

Petitioner received $2,683 in interest with respect to child support arrearages.

Petitioner received $21,000 in equity in a house from Norma Vaughan in exchange for representing Ms. Vaughan in legal matters.

In petitioner's bankruptcy proceeding, she stated that her 1993 monthly expenses were $1,698.84.

Petitioner's Children

Zachary A. and Syme A. Kutz (Zachary and Syme, respectively) are the sons of petitioner and Clarence A. Kutz (Clarence). Syme was born on March 26, 1968, and Zachary was born on July 4, 1969. Petitioner and Clarence were divorced in 1977 (the divorce). The divorce was accomplished by order and judgment of the Circuit Court for the Twelfth Circuit of Florida in and for Sarasota County (the Circuit Court). The Circuit Court awarded petitioner custody of Zachary and Syme.

After the divorce, Syme spent time living with each of his parents, but lived with his father, in Florida, most of the time.

He lived with his father during 1983 and during the majority of 1984. Petitioner provided no support for Syme during the time he lived with his father.

Zachary lived with petitioner until he moved out of her house in January 1988. In August 1988, Zachary began college in Colorado. In 1988, petitioner's father, Warren Fankhanel, provided $4,000 so that Zachary could attend college. In 1989, petitioner's father provided an additional $13,000 towards Zachary's college. In May 1990, Zachary graduated from college. Zachary was a full-time student during 1988, 1989, and 1990. He earned wage income of $8,234 in 1990.

OPINION

I. Introduction

Petitioner has assigned error to respondent's determination of deficiencies in, and additions to, petitioner's Federal income taxes for the years in question. Petitioner states that the entire deficiency for each year is in controversy. In support of her assignments of error, petitioner avers that (1) the amounts stated as gross and taxable income in the deficiency notice are incorrect, (2) petitioner is entitled to the normal business deductions for the years in issue, (3) petitioner is entitled to the normal personal deductions associated with the years in issue, and (4) because no deficiencies exist, no additions to tax apply. Petitioner also raises as a defense the claim that this Court lacks jurisdiction to hear this case because respondent's

notice of deficiency is void and without legal effect.  In support of that defense, petitioner avers that (1) respondent failed to make a determination, as required by the Internal Revenue Code, (2) the deficiency notice is arbitrary and erroneous because it fails fully to state the foundational evidence relied on by respondent, (3) respondent's determination does not enjoy a presumption of correctness since it is a naked assessment, and (4) respondent has denied petitioner due process.

At trial and on brief, petitioner limited the issues before the Court.  On brief, petitioner states that there are three issues before the Court:  (1) A child support issue, involving the number of dependents petitioner may claim and the character (whether interest or not) of certain payments received by her from her ex-husband, (2) the amount of income received and the amount of expenses incurred in connection with her real estate activities, and (3) whether the deficiency notice constituted a "naked assessment".  We assume that petitioner has abandoned all grounds raised in the petition but not addressed in her brief. With respect to the additions to tax, petitioner relies on our finding no deficiencies in tax.

At trial, respondent conceded certain increased deductions with respect to petitioner's rental income.  After trial, respondent conceded certain deductions with respect to personal exemptions.  We accept those concessions.

We shall first address petitioner's "naked assessment" argument and shall then address the remaining issues.

II. "Naked Assessment"

A. Introduction

Petitioner has devoted 10 pages of her 23 page brief to arguing that respondent has made a naked assessment. We distill petitioner's arguments to claims that the statutory notice is arbitrary and respondent has failed to come forward with evidence of any unreported income so that respondent bears the burden of proof.

B. Arbitrariness

Petitioner argues that the statutory notice is without foundation and is inherently arbitrary. Accordingly, petitioner argues that the notice of deficiency constitutes a "naked assessment", which is "invalid" within the rule of Helvering v. Taylor, 293 U.S. 507 (1935).[2] See United States v. Janis, 428 U.S. 433, 441 (1976). The rule of Helvering v. Taylor, supra,

_____

[2] To hold that a deficiency notice is invalid within the rule of Helvering v. Taylor, 293 U.S. 507 (1935), because it constitutes a "naked assessment" is not to hold that it is invalid in the usual sense or that this Court lacks jurisdiction over such notice. "Helvering v. Taylor, 293 U.S. 507 (1935), teaches that when a petitioner makes a showing casting doubt on the validity of a deficiency determination, the statutory notice itself is not rendered void; the result of such showing is that the respondent must then come forward with evidence to establish the existence and amount of any deficiency." Suarez v. Commissioner, 58 T.C. 792, 814 (1972), overruled as to another issue Guzzetta v. Commissioner, 78 T.C. 173 (1982). To avoid confusion, we shall refer to a notice of deficiency held to constitute a naked assessment as being "arbitrary".

may be simply put: a court is given sufficient cause to set aside respondent's determination of a deficiency if it is shown to the court that such determination was arbitrarily made. Helvering v. Taylor, supra at 515.

Petitioner has the burden of proving the arbitrariness of respondent's deficiencies, Williams v. Commissioner, 999 F.2d 760, 763 (4th Cir. 1993), affg. T.C. Memo. 1992-153; Shriver v. Commissioner, 85 T.C. 1, 3 (1985). The statutory notice, which is in evidence, states that, in various amounts, for the various years here in issue, petitioner had unreported income from self-employment, rentals, bartering transactions, wages, capital gains, and interest. The statutory notice allows various deductions. Petitioner has produced no evidence that any of the deficiencies in question were arbitrarily and erroneously determined. Petitioner principally relies on her own testimony and unsupported statements on brief that, during the years in question, she did not work, had no bartering income, lost money on her rental real estate properties, lived with a "significant other", and existed on gifts from her parents. First, we do not believe much of what petitioner claims. There is convincing evidence that petitioner had items of income from real estate sales, brokerage activities, and other sources during the years in issue. Second, petitioner was not a credible witness. On cross-examination, petitioner was unable to explain why a check she claimed as child support carried the notation "Cash for

register Store". On brief, respondent points out other contradictions in her testimony. Assuming she told the same story to respondent's agents responsible for the statutory notice, we do not believe it was arbitrary and erroneous for those agents to disbelieve petitioner. Petitioner has failed to prove that respondent's determinations of deficiencies in tax for the years in question were arbitrarily made.

C. Burden of Proof

The general rule is that the burden of proof is upon the taxpayer, Rule 142(a), which the taxpayer must carry by a preponderance of the evidence, e.g., Schaffer v. Commissioner, 779 F.2d 849, 858 (2d Cir. 1985), affg. in part and remanding Mandina v. Commissioner, T.C. Memo. 1982-34. This case involves unreported income, however, and, in cases of unreported illegal income, we require the Commissioner to provide a minimal evidentiary foundation supporting his determination of unreported income or else the burden of going forward with the evidence shifts to him. E.g., Berkery v. Commissioner, 91 T.C. 179, 186-187 (1988), affd. without published opinion 872 F.2d 411 (3d Cir. 1989). Certain of the Courts of Appeals require such a showing even if the unreported income is not from illegal sources. See, e.g., Portillo v. Commissioner, 932 F.2d 1128, 1133 (5th Cir. 1991), revg. in part and remanding T.C. Memo. 1990-68; Anastasato v. Commissioner, 794 F.2d 884, 887 (3d Cir. 1986), vacating and remanding T.C. Memo. 1985-101. The position of the Court of

Appeals for the Fourth Circuit, the court to which any appeal of this case is likely to go, is not clear with respect to income from legal sources. See Williams v. Commissioner, supra at 763. Whatever the position of the Court of Appeals for the Fourth Circuit, however, the record in this case contains ample evidence that petitioner received substantial amounts of unreported income from various, legal sources during the years in issue. We have found that petitioner made substantial deposits in bank accounts during 1983, and during 1986 through 1992. "A bank deposit is prima facie evidence of income and respondent need not prove a likely source of that income." Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). For 1983, 1987, 1988, 1989, and 1990, such deposits equal or exceed all of the cash items of income (self-employment and rental income) charged to petitioner by respondent. For 1984, 1985, 1986, and 1992, we have found that petitioner either received items of gross income (e.g., rental income) or reported on financial statements items of gross income equal to what respondent charged her. For 1991, petitioner had bank deposits and worked as a real estate and money broker beginning in October; by indirect methods of proof, respondent has provided evidence of substantial personal expenditures, sufficient to explain the self-employment income charged to petitioner for 1991. For 1993, petitioner admitted in her bankruptcy proceeding monthly expenditures of $1,698.84, which

are sufficient to explain the self-employment income charged to her for 1993.

Petitioner has shown nothing that justifies placing any aspect of the burden of proof on respondent. Petitioner bears the burden of proof. Petitioner's only factual defense to respondent's adjustments increasing petitioner's gross income is that petitioner existed on gifts from her parents and "significant other". We did not find petitioner to be a credible witness concerning the sources of her income. On brief, petitioner points us to one exhibit, Exhibit 16, "Funds Advanced to Carolyn Fankhanel", which, to the extent it addresses gifts to her, was objected to by respondent and is not in evidence. Beyond the conclusion to be drawn from petitioner's admissions that she received $5,000 from her father in 1983 and $2,000 from her parents in 1984, petitioner has failed to prove the amount of any gifts to her during the years in issue. She has failed to prove any facts supporting her assignments of error with respect to respondent's adjustments increasing her gross income for any of the years in issue. Respondent's determinations of deficiencies resulting from those adjustments are sustained.

III. Deduction for Personal Exemptions

A. Introduction

Respondent adjusted petitioner's income by disallowing personal exemption deductions claimed by petitioner for her son Syme A. Kutz (Syme) for all of the years in issue and for her son

Zachary A. Kutz (Zachary) for 1988 through 1993.  Subsequently,
respondent conceded such deductions for Syme for 1985 and 1986.
Petitioner concedes some of the remaining adjustments but claims
that she is entitled to personal exemption deductions for Syme
for 1983 and 1984 and for Zachary for 1988 through 1990.

   B.  Applicable Law

   In computing taxable income, an individual is allowed a
deduction for the exemptions specified in section 151.  Those
exemptions include an exemption for the individual herself and,
with limitations, an additional exemption for each dependent.
Sec. 151(b) and (c).[3]  The term "dependent" is defined in section
152(a)(1) to include a son or daughter of the taxpayer "over half
of whose support, for the calendar year * * * was received from
the taxpayer".  Section 152(e) provides a special test for
determining support in the case of children of divorced parents.
Section 152(e) was amended by Deficit Reduction Act of 1989
(DRA), Pub. L. 98-369, sec. 423(a), 98 Stat. 494, 799-800 (the
amendment), for tax years beginning after 1984.  The amendment
did not materially change the general rule of section 152(e)(1):
A child shall be treated as receiving more than half of his

---

[3]     For petitioner's taxable years 1983 through 1986 the
dependency exemption was provided under subsection (e) of
sec. 151.  Former subsection (e) was redesignated subsection
(c) and amended by the Tax Reform Act of 1986, Pub. L. 99-514,
sec. 103(b), 100 Stat. 2103.  For simplicity, we have used
section references as redesignated by the Tax Reform Act of 1986.

support from the parent having custody for a greater part of the year, if he receives more than half of his support from one or both of his parents and is in the custody of his parents for over half the year. The amendment did eliminate the following exception to the general rule. Prior to amendment, section 152(e)(2)(B) provided that the noncustodial parent was treated as having provided over one-half of the child's support if (1) he or she provided $1,200 or more during the year for support of the child and (2) the custodial parent failed to "clearly establish" that he or she provided more for the child's support than the noncustodial parent.

In the case of a dependent who is a child of the taxpayer, the additional exemption allowed by section 151(c)(1)(B) is allowed only if the child: "(i) has not attained the age of 19 at the close of the calendar year in which the taxable year of the taxpayer begins, or (ii) is a student."[4]

C. Syme

Petitioner claims an additional personal exemption deduction for Syme for 1983 and 1984. Respondent has determined that petitioner is not entitled to a dependency exemption for Syme for those years because Syme usually lived in the actual care and

_____

[4] In 1988, Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, sec. 6010(a), 102 Stat. 3691, added "who has not attained the age of 24 at the close of such calendar year" in clause (c)(1)(B)(ii), effective for tax years beginning after 1988. That change has no consequence to this case.

control of his father and only occasionally visited petitioner. Petitioner contests respondent's determination, contending that Syme, who turned 16 years old in 1984, lived with her and was in her actual custody during these years. We have found that Syme lived in Florida with his father, Clarence, during 1983 and during the majority of 1984 and that petitioner provided no support for Syme during the time he lived with Clarence.

To determine whether Syme was a dependent of petitioner's during 1983 and 1984, we apply the special test for determining support in the case of children of divorced parents found in section 152(e). We apply section 152(e) as in effect prior to the amendment. Syme lived with Clarence during 1983 and during the majority of 1984; petitioner, Syme's custodial parent, provided no support to him while he lived with his father. We are persuaded that, during 1983 and 1984, Clarence provided at least $1,200 a year in support to Syme. Petitioner also has failed to prove that she provided more of Syme's support than did Clarence during 1983 and 1984. Thus, under the special rule of section 152(e)(2)(B), Clarence is deemed to have provided over half of Syme's support for those years. For 1983 and 1984, Syme was Clarence's dependent, not petitioner's. See sec. 152(a). Accordingly, petitioner is not entitled to an additional exemption for Syme for 1983 and 1984. See sec. 151(c). Respondent's determination of deficiencies is sustained to the

extent of the adjustments disallowing additional exemptions for Syme for 1983 and 1984.

D. Zachary

Petitioner claims an additional personal exemption deduction for Zachary for 1988, 1989, and 1990. Zachary turned 19 in 1988, but, during 1988, 1989, and 1990, he was a full-time student. Thus, petitioner is entitled to an additional personal exemption deduction for Zachary for 1988 through 1990 if Zachary was petitioner's dependent, within the meaning of section 152(a)(1), for those years.

We need not concern ourselves with the section 152(e) test for determining support in the case of children of divorced parents. Under Florida law, Zachary's minority ended in 1987 when he turned 18 years of age. See Fla. Stat. Ann. sec. 1.01(13) (West 1998). He was then emancipated under Florida law, see Cronebaugh v. Van Dyke, 415 So. 2d 738, 741 (Fla. Dist. Ct. App. 1982), and neither parent had custody, so that section 152(e)(1) is inapplicable for 1988 through 1990. See Kaechele v. Commissioner, T.C. Memo. 1992-457 (finding that neither parent had "custody" of their children within the meaning of section 152(e)(1) since the daughters had reached the age of majority and were considered emancipated under Ohio law).

To show that Zachary was her dependent for the years in question, petitioner must prove that, for those years, she provided over half of his support. See sec. 152(a)(1); Rule

142(a). Petitioner has failed to prove that she provided over half of Zachary's support for any of the years in question. Petitioner has made no persuasive showing of the amounts expended by her in support of Zachary for any of the years in issue. She has made no showing of the total amounts expended for Zachary's support during those years. We have found that petitioner's father paid $4,000 and $13,000 towards Zachary's college costs in 1988 and 1989, respectively, and that Zachary earned $8,234 in 1990. Absent some estimate of the total dollar amount expended for Zachary's support, we cannot accurately determine whether petitioner provided more than one-half of the total amount spent in support of Zachary. See Pillis v. Commissioner, 47 T.C. 707, 708-709 (1967), affd. per curiam 390 F.2d 659 (4th Cir. 1968). Petitioner's minimal showing of the support she provided to Zachary during her taxable years 1988 through 1990 is insufficient to overcome the presumptive correctness of respondent's determination that petitioner did not furnish over one-half of Zachary's support during these years. Respondent's determination of deficiencies is sustained to the extent of the adjustments disallowing additional exemptions for Zachary for 1988 through 1990.

IV. Interest Income

Respondent made adjustments increasing petitioner's income by $3,043, $7,085, and $2,683 for 1991, 1992, and 1993,

respectively. Respondent explained such adjustments as interest payments received by petitioner on account of child support arrearages. Petitioner denies that she received any such interest payments. Petitioner concedes that she received some payments with respect to child support, but she claims that "she never received any interest at all on child support debt".

We have found that petitioner received interest payments with respect to child support arrearages in the amounts, and in the years, determined by respondent. That finding is based on petitioner's admissions. In addition to the admissions, the record contains a document entitled "Orange County Clerk of Courts Support Payment History", which shows interest paid to petitioner in those same amounts. Apparently, those interest payments were made pursuant to court order that interest should be calculated and paid on arrearages owed to petitioner by Clarence. See Kutz v. Fankhanel, 608 So. 2d 873, 877-878 (Fla. Dist. Ct. App. 1992). Payments made under a divorce or separation agreement that the terms of such agreement fix as child support are excludable from gross income. See sec. 71(c) (as amended by DRA, sec. 422(a), 98 Stat. 795-797); and sec. 71(b), prior to such amendment. Petitioner has failed to prove that the subject payments were fixed payments made under a divorce or separation agreement. To the contrary, the payments appear to have been made as court-ordered payments of interest. Interest is includable in gross income. See sec. 61(a)(4).

Respondent's determination of a deficiency is sustained to the extent it is based on the interest adjustments here described.

V. Real Estate Activities

A. Income

Petitioner argues that she is a "cash basis" taxpayer and does not owe taxes on money that was not received. She states that she managed property for people and, "[i]n order to build a[n] investment program for herself, she took a[n] interest in the property instead of a management fee." It is unclear exactly what error petitioner is ascribing to respondent. Petitioner may misunderstand the term "cash basis". The cash receipts and disbursements method of accounting (cash method) is a permissible method of accounting. See sec. 446(c)(1). Generally, under the cash method, all items that constitute gross income, "whether in the form of cash, property, or services" (emphasis added), are includable in gross income for the taxable year in which received. Sec. 1.446-1(c)(1)(i), Income Tax Regs. With certain exceptions not here relevant, "if services are paid for in property, the fair market value of the property taken in payment must be included in income as compensation". Sec. 1.61-2(d)(1), Income Tax Regs. Petitioner has shown no error in respondent's adjustments increasing petitioner's income on account of compensation received in forms other than cash payments.

B. Expenses

Petitioner argues that she has additional rental activity expenses beyond those allowed by respondent. Simply put, petitioner has failed to prove deductible amounts in excess of those allowed by respondent. Petitioner failed to produce books and records detailing her real estate activities. The purpose of certain checks presented to us by petitioner is unclear. Petitioner has failed to prove rental activity related deductions in excess of those allowed by respondent. Respondent's determination of deficiencies in that respect is sustained.

VI. Additions to Tax

A. Section 6651(a)(1)

Section 6651(a)(1) imposes an addition to tax for failure to file a timely return, unless it is shown that such failure is due to reasonable cause and not due to willful neglect. Petitioner bears the burden of proof as to reasonable cause and the absence of willful neglect. See Rule 142(a).

Respondent has determined section 6651(a)(1) additions for each of the years in issue. As a defense to the section 6651(a)(1) additions, petitioner relies on our finding no deficiencies in tax. Except with respect to concessions made by respondent, we have sustained respondent's determinations of deficiencies. Moreover, petitioner has failed to prove reasonable cause and lack of willful neglect. Respondent's

determinations of additions to tax under section 6651(a)(1) are therefore sustained.

B.   Section 6654(a)

Section 6654(a) imposes an addition to tax for failure to make timely estimated income tax payments.  Section 6654(e) contains several computational exceptions to application of the addition to tax.  Petitioner bears the burden of proving that she paid estimated tax or that any of the exceptions excuse her from paying estimated tax.  See Rule 142(a).  The estimated tax penalty is mandatory, unless petitioner can show that she qualifies for one of these exceptions.  Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980) (citing Estate of Ruben v. Commissioner, 33 T.C. 1071, 1072 (1960)).

Respondent has determined that petitioner is liable for the addition to tax under section 6654(a) for each of the years 1983 through 1989 and 1991 through 1993.  Petitioner has failed to show that she had paid estimated tax or that any of the exceptions apply.  Respondent's determinations of additions to tax under section 6654(a) therefore are sustained.

C.   Section 6673(a)(1)

1.   Introduction

Section 6673(a)(1) provides that we may impose a penalty of up to $25,000 where, among other things, a taxpayer has instituted or maintained proceedings primarily for delay or where the taxpayer takes positions that are frivolous or groundless.

A taxpayer's failure to provide the Commissioner with information requested and his failure to offer evidence at trial pertaining to the substantive issues raised in the notice of deficiency are evidence that a suit in this Court was instituted primarily for delay. Stamos v. Commissioner, 95 T.C. 624, 638 (1990), affd. without published opinion 956 F.2d 1168 (9th Cir. 1992). A taxpayer's position is frivolous "if it is contrary to established law and unsupported by a reasoned, colorable argument for change in the law. * * * The inquiry is objective. If a person should have known that his position is groundless, a court may and should impose sanctions." Coleman v. Commissioner, 791 F.2d 68, 71 (7th Cir. 1986); Booker v. Commissioner, T.C. Memo. 1996-261; see also Hansen v. Commissioner, 820 F.2d 1464, 1470 (9th Cir. 1987) (apparent finding that petitioner should have known that claim was frivolous allows for section 6673 penalty).

Based on the record in this case, we conclude that, in many respects, petitioner's position in this proceeding is both frivolous and groundless and petitioner undertook certain actions primarily for delay.

### 2. Background

Petitioner's initial petition lacks any explanation of the basis of her disagreement with respondent and fails to comply with Rule 31(a), which states that the purpose of the pleadings is to give the parties and the Court fair notice of the matters in controversy and the basis for their respective positions.

Petitioner's amended petition avers no particular facts with respect to respondent's numerous adjustments but, for the most part, raises constitutional and other arguments that petitioner later abandons.

In December 1995, petitioner submitted three documents: (1) Motion to Dismiss, (2) Motion to Compel a Constitutional Guarantee, and (3) Request for Production of Documents and Things. By order dated January 22, 1996 (the January 22 order), the Court denied the two motions and returned the request. The January 22 order cautions petitioner:

> Rather than relying on groundless constitutional arguments and misconceived notions about the Tax Court's procedures, petitioner's interests will be better served by continuing to confer with respondent's counsel in an attempt to settle this case and by following the instructions in the Court's standing pre-trial order * * *.

The January 22 order also informs petitioner that she bears the burden of proof and advises her to submit to respondent the documentary evidence to substantiate her assertions that respondent's notice of deficiency is incorrect.

This case was calendared for trial at a trial session of this Court commencing on September 30, 1996. On that date, a hearing was held to determine whether the case was ready for trial. At that hearing, petitioner's failures to cooperate with respondent to prepare this case for trial were cataloged. Petitioner was instructed to meet with respondent's counsel to attempt a stipulation for trial. That effort was unsuccessful,

and the case was continued. Petitioner was ordered to file a status report no later than December 1, 1996. Petitioner failed to file the required report. On December 9, 1996, petitioner was again ordered to file a status report due no later than January 27, 1997. She was also ordered to show cause why her case should not be dismissed on account of her failure properly to prosecute and why the Court should not sanction her for failure to comply with orders of the Court.

Petitioner had not complied with our December 9, 1996, order by January 2, 1997, the date on which petitioner filed for bankruptcy (causing us to order all proceedings automatically stayed because of 11 U.S.C. sec. 362(a)(8) (1994)). The Government moved in bankruptcy court for relief from the automatic stay in order that this case could continue in this Court. Petitioner objected and sought sanctions and damages against the Government. The bankruptcy court recited the Government's position as follows: "In sum, the Government contends this is nothing more than a two-party dispute which is already pending before the Tax Court". The bankruptcy court granted the Government's motion and lifted the stay on March 25, 1997. The bankruptcy court said that petitioner's contentions were "without merit concerning her right to have her tax liability determined by this Court." Petitioner's motion for sanctions was denied with prejudice, the bankruptcy court stating: "[T]here is not a scintilla of evidence presented to

support * * * [sanctions]". Petitioner was discharged as a debtor on April 2, 1997. On July 2, 1997, we lifted the stay in these proceedings and restored the case to the general docket for trial or other disposition. Subsequently, on August 12, 1997, the case was set for trial on January 20, 1998, in Tampa, Florida.

Between August 12, 1997, and January 20, 1998, petitioner twice moved to stay this case due to loss of jurisdiction to the bankruptcy court. We denied her motion once, explaining that the stay had been lifted, and then, on her motion to reconsider, we denied it again, stating that the motion for reconsideration restated the arguments made in the original motion and considered by the Court in issuing its order in response to the original motion. In denying her motion for the second time, we stated:

> To assist petitioner in understanding our order of October 24, 1997, we point out that certain taxes are not discharged in bankruptcy. See, e.g., 11 U.S.C. 523(a)(1). The automatic stay of 11 U.S.C. 362(a)(8) was terminated on April 2, 1997, allowing this Court to proceed to redetermine the deficiencies as petitioned. See, e.g., United States v. Wilson, 974 F.2d 514 (4th Cir. 1992. * * *

On January 20, when the case was called for trial, petitioner again moved to stay proceedings because of the bankruptcy proceeding. We again denied the motion.

Petitioner failed to file a trial memorandum, as called for by our pretrial order.

### 3. Discussion

Petitioner failed to file income tax returns for 11 years and offers no justification for that failure. She instituted a proceeding in this Court without assigning any error to respondent's determinations. When she finally did state her position in her amended petition, she relied on few averments of fact and relied principally on Constitutional and procedural arguments, which she later abandoned or was unable to prove. She made Constitutional arguments that we described as groundless. She failed to cooperate with respondent in preparing this case for trial. She failed to stipulate to any facts. She instituted proceedings in the bankruptcy court that were intended only to shift the forum of her dispute with respondent and could accomplish little other than to delay a resolution of the issues in this case. The bankruptcy court described her contentions as being "without merit". She has twice brought motions on grounds rejected by this Court. She has produced nothing to justify her total rejection of all adjustments made by respondent.

### 4. Conclusion

We are firmly convinced that petitioner both instituted and maintained these proceedings primarily for delay. Also, she has made groundless arguments. She has caused both the Court and respondent to expend scarce resources to respond to her many filings and other actions and to conduct a trial at which she presented evidence that barely touched on even a few of the

grounds of respondent's determinations of deficiencies.  We find petitioner is deserving of a significant penalty because of the persistence of her frivolous assault.  On our own motion, pursuant to section 6673(a)(1), we will require petitioner to pay a penalty to the United States in the amount of $5,000.

<u>Decision will be entered under Rule 155</u>.